**BLACKHAWK HEATING & PLUMBING CO., Inc., Plaintiff,**

**v.**

**George F. TURNER, Jr., Defendant.**

**No. Civ. 70-52 PHX.—CAM.**

United States District Court, D. Arizona.

May 6, 1970.

---

Fennemore, Craig, von Ammon & Udall, Philip A. Edlund, Phoenix, Ariz., for plaintiff.

Lesher & Scruggs, D. Thompson Slutes, Tucson, Ariz., for defendant.

## ORDER

MUECKE, District Judge.

Defendant, pursuant to F.R.Civ.P. 12 (b) (5), has moved to dismiss the complaint or in lieu thereof, to quash the return of service made upon him "by leaving copies [of the summons and complaint] at his * * * usual place of abode with some person of suitable age and discretion then residing therein * * *." [1] F.R.Civ.P. 4(d) (1).

While admitting by his appearance herein that he has received actual notice of the pendency of this action, defendant nevertheless has claimed such notice was not received by him as required by F.R.Civ.P. 4(d) (1). He claims not to have been a resident of the apartment where service was made.

In cases where actual notice of suit has been received by defendant, Rule 4(d) (1) should be liberally construed to effectuate service. Nowell v. Nowell, 384 F.2d 951 (5th Cir. 1967),[2] cert. denied, 390 U.S. 956, 88 S.Ct. 1053, 19 L.Ed.2d 1150 (1968); Karlsson v. Rabinowitz,[3] 318 F.2d 666 (4th Cir. 1963); Rovinski v. Rowe, 131 F.2d 687 (6th Cir. 1942); Hysell v. Murray, 28 F.R.D. 584 (S.D.Iowa 1961); Frasca v. Eubank, 24 F.R.D. 268 (E.D.Penn. 1959); Blane v. Young, 10 F.R.D. 109 (N.D.Ohio 1950); Zuckerman v. McCulley, 7 F.R.D. 739 (E.D.Mo.1947); Skidmore v. Green, 33 F.Supp. 529 (S.D.N.Y. 1940). See 2 J. Moore, Federal Practice ¶ 4.11[2] (1967); 4 C. Wright & A. Miller, Federal Practice and Procedure § 1096 (1969). See generally C. Wright, Federal Courts § 64 (2d ed. 1970). The construction of the statutory language must be a natural rather than an artificial one. Nowell v. Nowell, supra, 384 F.2d at 953; Frasca v. Eubank, supra, 24 F.R.D. at 270. Notwithstanding the policy of liberal construction, in the final analysis each case must turn upon its own factual situation. Hysell v. Murray, supra, 28 F.R.D. at 587.

For this reason, the factual situation in this case warrants detailed scrutiny. As pointed out in footnote 1, supra, service was attempted by leaving copies of the summons and complaint with defendant's twenty-year old daughter, Sandy, at an apartment in Phoenix, Arizona on January 28, 1970. It is defendant's contention that he and his wife moved from that address the day after Thanksgiving of 1969 intending never to return. Plaintiff, on the other hand, contends that the total circumstances were such that defendant, on the date of attempted service, had sufficient links with the apartment that it should be considered his "usual place of abode" within the meaning of Rule 4(d) (1).

Defendant is a private investigator. (Affidavit of George F. Turner, Jr., of Feb. 17, 1970). He and his family moved to Phoenix from Oklahoma City two or three years ago (Deposition of

---

1. The private process server's affidavit of return of service indicates that service was made

"UPON: GEORGE F. TURNER, JR. by leaving one true copy of the Summons and Complaint with SANDY TURNER, his daughter, being of suitable age and discretion, and residing therein, at 4750 North Central Avenue, Apt. # 10K, Phoenix, Maricopa County, Arizona, his usual place of abode, on the 28th day of January, 1970, at the hour of 12:25 o'clock, P.M. Present, for the purpose of witnessing said service, was THOMAS C. HADLEY."

2. Noted, 17 U.Kan.L.Rev. 125 (1968).

3. Noted, 24 Md.L.Rev. 357 (1964); 9 Utah L.Rev. 192 (1964).

Sandra Lynn Turner at 13) where they had lived for fifteen years. (Deposition of Jan Elizabeth Turner at 5). Since August of 1967, he has been renting the apartment at which service of process herein contested was made. (Deposition of Helen Buell at 7). There is evidence that defendant, since September of 1969, has sought to avoid service of process. (Deposition of Philip R. Thompson at 6–9; Deposition of Helen Buell at 13).

Some 150 hours were expended by a process server in attempting to serve defendant with a deposition subpoena in Blackhawk Heating & Plumbing Co. v. United Bonding Ins. Co., No. 67 C362, a related lawsuit pending in the Northern District of Illinois. (Affidavit of Thomas C. Hadley). At the defendant's request, for example, the apartment management where he lived, on September 15, 1969, temporarily barred admittance to the building of any one desiring entrance to defendant's apartment (Ex. 2) and on September 19, 1969, adopted regulations to control entrance to the building by officers of the court. (Ex. 1).

That defendant as of the date of service, and as late as March 11, 1970, paid the rent on the apartment is beyond dispute. (Depositions of Sandra Lynn Turner at 12, James N. Marinaro at 18, George Franklin Turner, III at 10, and Helen Buell at 7). The apartment project manager as of the date of service and as late as March 11, 1970 had received no notice of defendant's move, which defendant alleges was consummated the day after Thanksgiving of 1969.

"Q. Has Mr. Turner or his wife ever informed you that they do not intend to live in this apartment any longer and will not be returning to this apartment?

A. They have given me no verbal or written notification of that sort.

Q. As far as you know, then, Mr. and Mr. Turner still reside in this apartment, is that correct?

A. They are still the leasees [sic], as far as I'm concerned." (Buell deposition at 9).

Mr. Buell's employer, the broker who manages the apartment, agrees:

"Q. If you were informed by Mr. Turner that neither he nor his wife considered themselves to be living in that apartment and they do not intend to return to that apartment would you ask your resident manager to terminate the tenancy of the Turners at that apartment?

A. Yes, I think we probably would. Our procedure is a little different, being the building is owned by the Federal Government and has unique management problems, we probably would recommend this to the local FHA office and say because the parents are no longer there we would like to, or these are young unmarried people probably going to run amuck, so we would ask their advice on it. And if they said, 'Well, leave them alone,' we would. If they said, 'Use your judgment,' why, we probably in an orderly fashion give them some time to find other quarters, probably would.

Q. But as long as you believe that Mr. and Mrs. Turner still reside in the apartment you will in all probability take no such action, is that correct?

A. No, we wouldn't take such action. Even more than that, at this point the project manager and myself certainly believe the Turners are the residents and are the leasees [sic], we look to them to take care of their unit and all their children living in it.

Q. And as far as you know, Mr. and Mrs. Turner still live in the apartment?

A. Certainly." (Thompson deposition at 11).

That defendant left the family furniture in the Phoenix apartment is beyond dispute. (Depositions of Sandra Lynn Turner at 11, Jan Elizabeth Turner at

10, George Franklin Turner, III at 14, and James N. Marinaro at 11).

That the two family automobiles are still in Phoenix is beyond dispute. (Depositions of Sandra Lynn Turner at 11, Jan Elizabeth Turner at 13, George Franklin Turner, III at 12, and James N. Marinaro at 12).

That defendant as of the date of service and as late as March 2, 1970 received his mail at the Phoenix apartment is beyond dispute. (Depositions of Sandra Lynn Turner at 11 and George Franklin Turner, III at 9). That he, as late as March 24, 1970, had left no forwarding address with the United States Post Office (Affidavit of Elmer B. Cottrell, Custodian of Records of U.S. Post Office, Phoenix, Arizona) is not disputed, although his son provides a reason for the failure to leave a forwarding address: "the children are at the apartment to get the mail." (Deposition of George Franklin Turner, III at 10).

That defendant caused 1970 Phoenix telephone listings for the 4750 North Central telephone to be made (Affidavit of David C. O'Neil, Custodian of Records of Mountain Bell Telephone Co.) is not disputed. That he made no attempt prior to the last date for cancellation to cancel them (O'Neil affidavit) is not disputed. That he made no attempt to disconnect the telephone service to the Phoenix apartment until February 25, 1970 (O'Neil affidavit) is not disputed. Nor is it disputed that telephone service was in fact disconnected on February 28, 1970. (O'Neil affidavit).

Against these objective facts upon which plaintiff relies to establish that defendant's usual place of abode on the day in question was Apt. 10–K, 4750 North Central Avenue, Phoenix, Arizona, defendant submits the following:

(1) affidavits of defendant's three children, Joni Hoyle and James Marinaro, that defendant and his wife established a "permanent residence outside of Arizona" shortly after Thanksgiving, 1969;

(2) defendant's answers to interrogatories to the effect that defendant's permanent residence since December 8, 1969 has been 711 Pacific Coast Highway, Suite 405, Huntington Beach, California;

(3) copies of a lease to the California apartment showing a date of execution thereon of December 8, 1969, together with a receipt for rentals for this apartment dated December 7, 1969;

(4) various indicia of California residence prior to January 28, 1970, e. g., copies of imprinted checks bearing the California address; copies of defendant's California bank statement indicating deposits and other banking activity prior to January 28, 1970; copies of mail bearing pre-January 28, 1970 postmarks addressed to the California address; and copies of minutes of shareholders' meetings of Geo. F. Turner, Jr. Inv., Inc. signed by the Secretary-Treasurer, Gloria Turner, defendant's wife, including minutes of December 27, 1969 indicating the corporation that day adopted a motion

THAT PRESIDENT TURNER BE DIRECTED TO APPLY FOR AND OBTAIN LICENSES FOR THE CORPORATION TO DO BUSINESS AS REPOSSESSOR AND PRIVATE DETECTIVE IN THE STATE OF CALIFORNIA, WITH PRINCIPAL OFFICES IN PRESIDENT TURNER'S NEW RESIDENCE AND DOMICILE, 711 PACIFIC COAST HIGHWAY, SUITE 405 HUNTINGTON BEACH, CALIFORNIA 92646. (Minutes of December 27, 1969 shareholders' meeting of George F. Turner, Jr., Inv., Inc.) ;

and

(5) affidavits of defendant and his wife that they left Arizona "on the day after Thanksgiving, 1969 and [then] established their permanent residence and domicile in the State of California."

As stated above, the process server, Jerry G. Lawrence, accompanied by Thomas C. Hadley, on January 28, 1970, left the summons and complaint at the apartment with defendant's daughter, Sandra. We do not deem it particularly significant whether (1) the process server dropped the papers inside the apartment (Hadley affidavit) or (2) Joni Hoyle kicked the papers in mid-air causing them to land in the hall just outside the apartment. (Depositions of Sandra Lynn Turner at 5, Joni Hoyle at 7). It is uncontradicted that (1) the process server knocked on the door, (2) a young lady answered, (3) the process server asked if defendant was home, (4) the young lady answered in the negative, (5) the process server asked, "When do you expect him?" and (6) the young lady answered, "He is out of town but I think he will be back in a day or two." (Affidavits of Jerry G. Lawrence and Thomas C. Hadley). Then asked her identity, the young lady replied, "I'm Sandy, George is my father." (Affidavits of Lawrence and Hadley). Opposed to these two affidavits, Sandy, in her affidavit, stated that when asked if she expected defendant, she said "No." (Affidavit of Sandra Lynn Turner). However, when at her deposition this affidavit was read to her and when asked if that is what happened, she said:

"A. Well, yes, I guess so. *I don't know. I can't remember.* I know I signed that and everything." (Emphasis added). (Deposition of Sandra Lynn Turner at 7).

Her sister cannot remember either. (Deposition of Jan Elizabeth Turner at 13). Nor can Joni Hoyle. (Hoyle deposition at 6). Defendant's son was asleep at the time. (Deposition of George Franklin Turner, III at 5).

The process server then tried to hand Sandy the summons and complaint (Affidavits of Lawrence and Hadley) but she tried to shut the door. (Affidavits of Lawrence and Hadley; Depositions of Sandra Lynn Turner at 5, Joni Hoyle at

7, and Jan Elizabeth Turner at 12). Thereupon, the papers landed either just inside or outside the door to Apartment 10–K, a fact we deem not relevant.

One other fact is here relevant: the method by which defendant received actual notice. As mentioned above, defendant is also involved in a lawsuit in the Northern District of Illinois.

"MR. SLUTES [defendant's attorney]: The lawyer for Blackhawk told the lawyer for United Bonding back in Chicago that they had served George Turner in Arizona, and the lawyer for United Bonding checked with George Turner on that, and George Turner said, 'I know nothing about it.' So they contacted us, and we asked the clerk of the court to mail us a copy of the summons and complaint, if one were filed against George Turner. And we got a copy here. To my knowledge George Turner has never seen it." (Deposition of Jan Elizabeth Turner at 16).

There are a number of alternatives this Court could follow. We could refer this matter to a special master to take evidence. Neuburg Sales Serv. v. Mitchell Mfg. Co., 127 F.Supp. 250 (S.D.N.Y. 1955); Steinberg v. Landair Associated Corp., 10 F.R.D. 447 (S.D.N.Y.1950). *But see* Jones v. Davega Stores Corp., 10 F.R.D. 434 (S.D.N.Y.1950). We could, upon motion of a party, hold a preliminary hearing. F.R.Civ.P. 12(d). Or we could, based upon the evidence presently in the record, decide the service of process question: Was service of process on January 28, 1970 made upon defendant at "his * * * usual place of abode" by leaving copies of the summons and complaint "with some person of suitable age and discretion then residing therein?" F.R.Civ.P. 4(d) (1).

As the commentators, 2 J. Moore, Federal Practice, *supra,* and C. Wright & A. Miller, Federal Practice and Procedure, *supra,* point out, the "usual place of abode" phrase in Rule 4(d) (1) is derived from former Equity Rule 13 and

although it has long been present in the law, meaningful definitions of the phrase are few. We do not deem this an appropriate case to define the term; therefore, we make no attempt to do so. Although sometimes criticized,[4] the thread tual notice" rule of Karlsson v. Rabino of the "actual notice" rule of Karlsson v. Rabinowitz, *supra,* and Nowell v. Nowell, *supra,* runs consistently throughout the opinions. Cases are collected in 2 J. Moore, Federal Practice, *supra;* C. Wright & A. Miller, Federal Practice and Procedure, *supra;* and Annot., 127 A.L.R. 1267 (1940).

An alternative has been proposed: "consider the totality of the circumstances surrounding the substituted service to determine whether in all probability the procedure used would inform the defendant of the proceedings against him." *Note,* 17 U.Kan.L.Rev., supra. To this could be added that in cases where by his appearance (as is the case here) the defendant indicates that he has received actual notice of suit even though such notice has not been in strict accordance with the Rule, and there is no claim of immunity from process or prejudice by reason of the manner or time in which notice was received, it would seem absurd to argue that the defendant had not received notice. Whether this rule or that of Karlsson v. Rabinowitz, *supra,* is applied, we think there is sufficient nexus between defendant and Apartment 10–K, 4750 North Central Avenue, Phoenix, Arizona, to uphold this service of process in that the totality of circumstances were such as to make it likely that the defendant would receive notice of service, and that the plaintiff in making such service was justified under F.R.Civ.P. 4(d) (1). Justification arises from the circumstances related in this opinion: defendant (1) paid the apartment rent, (2) made no effort to leave a forwarding address or disconnect telephone service until after the date of service, (3) left all the furniture and both family automo-biles in Phoenix, and (4) received actual notice. In addition, service was made upon defendant's twenty-year old daughter. Her suitability of age and discretion is not questioned.

To attempt to distinguish the cases, e. g., Williams v. Capital Transit Co., 94 U.S.App.D.C. 221, 215 F.2d 487, in which service was made upon defendant's estranged wife at her home as opposed to service here upon the daughter in the Phoenix apartment, or Di Leo v. Shin Shu, 30 F.R.D. 56 (S.D.N.Y.1961), in which service was made upon defendant's daughter in her apartment, although defendant resided in a different apartment in the same building, would be fruitless.

IT IS ORDERED the motion to dismiss the complaint, or in lieu thereof to quash the return of service, is denied.