**MINNESOTA MINING AND MANUFAC-TURING COMPANY, a Delaware Corporation, Plaintiff,**

v.

**Kent A. KIRKEVOLD and Verbatim Corporation, a California Corporation, Defendants.**

**Civ. No. 4–79–623.**

United States District Court,
D. Minnesota,
Fourth Division.

Feb. 6, 1980.

---

Frank Hammond, David C. Forsberg and Margaret K. Savage, Briggs & Morgan, St. Paul, Minn., for plaintiff Minnesota Mining & Manufacturing Co.

William J. Hanley, Harrigan & Hanley, Minneapolis, Minn., for defendant Kent A. Kirkevold.

James S. Simonson and Stephen J. Snyder, Gray, Plant, Mooty, Mooty & Bennett, Minneapolis, Minn., for defendant Verbatim Corporation.

## MEMORANDUM AND ORDER

MacLAUGHLIN, District Judge.

This matter is before the Court on the motion of plaintiff Minnesota Mining and

Manufacturing Co. (3M) to remand this action to state court and on defendant Kirkevold's motion to dismiss or alternatively to quash service of process. For the reasons outlined herein, the Court has determined that both motions should be denied.

This action was commenced on December 8, 1979, by 3M, a Delaware corporation with its principal place of business in Minnesota, in Ramsey County District Court against defendant Kent A. Kirkevold and the defendant Verbatim Corporation. On December 12, 1979, both defendants removed the action to this Court. Kirkevold is a former Minnesota employee of 3M, and at the conclusion of his employment held the position of senior process engineer in the Data Recording Products Division in St. Paul. According to the complaint, Kirkevold was engaged in the development of magnetic media, which is utilized in storing digital information used with computers and telecommunications equipment. The Verbatim Corporation, a California corporation with its principal place of business in California, is also involved in the development of magnetic data storage media. Verbatim recently hired Kirkevold as a senior staff chemist. Kirkevold commenced his employment with Verbatim in Sunnyvale, California on December 3, 1979.

3M has asserted a number of claims in its complaint. First, 3M contends that Kirkevold has breached his employment agreement with 3M, which by its terms prohibits the disclosure of confidential information and bars the rendering of services to any "conflicting organization," which is basically defined as an organization which has products which resemble or compete with 3M's products. Second, 3M argues that Verbatim's conduct amounts to unfair competition. Finally, 3M alleges that Verbatim has tortiously interfered with 3M's contractual relationships. The plaintiff seeks damages from Verbatim and equitable relief against both defendants.

During the fall of 1979, Kirkevold and the Verbatim Corporation discussed the possibility of Kirkevold becoming employed at Verbatim in connection with Verbatim's efforts to develop and manufacture rigid discs in the magnetic media area. During this time frame, Kirkevold apprised his superiors at 3M of the pendency of these employment discussions. In mid-November, Kirkevold and Sally Kirkevold, his wife, spent two days meeting with realtors and searching for a house to purchase in the San Jose, California area. At the time, the Kirkevolds also explored the educational opportunities in the San Jose area for their children. On November 23, 1979, the Kirkevolds listed their house at 1049 Sprucewood Avenue in Woodbury, Minnesota for sale through a local realtor. During late November, Kent Kirkevold sold various items which he perceived would not be useful in California, and purchased various items he thought might be necessary in California. On November 27th, defendant Kirkevold left the employ of 3M, where he had been employed since 1964 in various technical capacities. Three days later, on November 30th, Kent Kirkevold packed most, but not all, of his personal belongings in his car and drove to California to begin his new employment with Verbatim. Kirkevold commenced his new employment with Verbatim on December 3rd, and has been employed there continuously to the present time. Upon arriving in California, Kirkevold rented and moved into a one bedroom apartment in Sunnyvale, California. Other than to attend his deposition, defendant Kirkevold has not returned to Minnesota.

Until defendant Kirkevold left Minnesota on November 30th, he, his wife Sally, and their children had resided in their Woodbury, Minnesota home for approximately ten years. After Kent Kirkevold's departure, Sally Kirkevold remained at their jointly owned Woodbury family home along with the children in order to assist in the sale of the family home and to complete the arrangements for the family to move to California to join her husband. On December 8th, the plaintiff caused Mrs. Kirkevold to be personally served with the summons and complaint in this action at the Kirkevolds' Woodbury home. Mrs. Kirkevold forwarded the documents served upon her to her husband through Verbatim in Califor-

nia the following day. By the time service was effected on Mrs. Kirkevold, Kent Kirkevold had nearly completed his first week of employment at Verbatim in Calfornia. As noted, defendants filed their removal petition in this Court on December 12th.

As the basis for its motion to remand, 3M argues that at the time this action was commenced, defendant Kirkevold was still a citizen of Minnesota and therefore incomplete diversity exists. Consequently, 3M reasons, the removal of the action to this Court was ineffective as this action could not have been brought in this Court originally. 28 U.S.C. § 1441(a). Defendant Kirkevold has argued that dismissal is appropriate for two reasons. First, he contends that the substituted service of process at his Woodbury home in Minnesota was ineffective. Second, Kirkevold asserts that venue was improper in Ramsey County where the case was brought initially and therefore the action should be dismissed for improper venue.

PLAINTIFF'S MOTION TO REMAND

█ It is well settled that for purposes of determining whether diversity of citizenship exists, the citizenship of the parties at the time the action is commenced is controlling. *Smith v. Sperling*, 354 U.S. 91, 77 S.Ct. 1112, 1 L.Ed.2d 1205 (1957); *Janzen v. Goos*, 302 F.2d 421 (8th Cir. 1962). When a case has been removed from state to federal court, diversity must exist at the time when the suit was commenced and when the petition for removal is filed. 13 Wright, Miller & Cooper, *Federal Practice & Procedure*, § 3612 at 716 n. 15 (1975). As this action was commenced in state court on December 8, 1979, and the removal petition was filed on December 12th, the citizenship of the parties as of these dates is controlling for diversity purposes. It is equally well settled that "citizenship" for diversity purposes means "domicile," as opposed to mere physical presence or residence in the state. *Bruton v. Shank*, 349 F.2d 630 (8th Cir. 1965); *Janzen v. Goos*, 302 F.2d 421 (8th Cir. 1962). While a person may be a resident of more than one state, a person has only one domicile for diversity of citizenship purposes at any one time, and residence and domicile are "wholly different things . . ." *Steigleder v. McQuesten*, 198 U.S. 141, 143, 25 S.Ct. 616, 617, 49 L.Ed. 986 (1905). *See Texaco-Cities Service Pipe Line Co. v. Aetna Casualty & Surety Co.*, 283 F.2d 144 (8th Cir. 1960); *Young v. Mitchell*, 437 F.Supp. 348, 350 (S.D.Fla.1977) ("not uncommon for a resident of one state to be a domiciliary of another state for diversity purposes"); 13 Wright, Miller & Cooper, *Federal Practice & Procedure*, § 3612 at 715 (1975). A person can change his domicile, and thus his citizenship for diversity purposes, for any reason and at any time. *Id.*, § 3613 at 728. As the Eighth Circuit noted in *Bruton v. Shank*, 349 F.2d 630, 633 (8th Cir. 1965):

"Generally speaking, in order '(to) acquire a domicil of choice, the law *requires the physical presence of a person at the place of domicil claimed, coupled with the intention of making it his present home.* When these two factors concur, the change in domicil is instantaneous. Intention to live permanently at the claimed domicil is not required. If a person capable of making his choice honestly regards a place as his present home, the motive prompting him is immaterial.'"

*Id. quoting Ellis v. Southeast Const. Co.*, 260 F.2d 280, 281 (8th Cir. 1958). The issue presented here is whether defendant Kirkevold had changed his domicile, and thus his citizenship for diversity purposes, from Minnesota to California at the time this action was commenced so as to provide diversity and justify the removal of the case to this Court.

█ The Court has concluded that prior to the time this action was commenced, defendant Kirkevold became a domiciliary of California for diversity purposes and therefore the Court has subject matter jurisdiction over this proceeding because complete diversity exists. *Strawbridge v. Curtiss*, 7 U.S. (3 Cranch) 267, 2 L.Ed. 435 (1806). The two elements necessary to establish a domicile for diversity purposes, physical presence in a state and the intent to make that state the person's present

home, were clearly present here prior to the time this action was commenced in state court and thereafter removed to this Court. First of all, defendant Kirkevold was physically present in California and had established a residence there by December 2nd. Further, at the time this action was commenced and thereafter, defendant Kirkevold clearly possessed an intent to make California his present home. On December 3rd, Kirkevold began his new employment with Verbatim and has been continuously employed there since. At that time, Kirkevold had in his possession his car and most of his personal belongings. Prior to December, the Kirkevolds had looked for housing in the San Jose, California area, had listed their home in Minnesota for sale with a realtor, and had sold a quantity of goods which they considered less than useful in California. Consistent with the foregoing, defendant Kirkevold has asserted in his affidavit that at the time he left Minnesota, it was his intention to reside in California permanently. Although the rest of his family remained in Minnesota and while it was possible that defendant Kirkevold might return to Minnesota to assist his family in moving to California or in connection with the sale of his Woodbury home, these factors do not compel the conclusion that defendant Kirkevold intended that Minnesota serve as his "present home" at the time this action was instituted. The Court has considered the relevant factors and has concluded that defendant Kirkevold changed his domicile for diversity purposes prior to the time this action was commenced and the petition for removal was filed. *Bruton v. Shank*, 349 F.2d 630 (8th Cir. 1965); *Medtronic, Inc. v. Intermedics, Inc.*, CIVIL 4–78–465 (D.Minn., February 13, 1979).

## DEFENDANT KIRKEVOLD'S MOTION TO DISMISS OR ALTERNATIVELY TO QUASH SERVICE

### A. VENUE ASPECTS

Defendant Kirkevold has argued that because the venue of this action was improper in Ramsey County where the action was originally brought, the venue is likewise improper once the action has been removed to federal court. This argument must be rejected.

The general removal statute, 28 U.S.C. § 1441(a), specifically provides that an action may be removed "to the district court of the United States for the district and division embracing the place where such action is pending." This passage operates as a venue provision. *Polizzi v. Cowles Magazines, Inc.*, 345 U.S. 663, 73 S.Ct. 900, 97 L.Ed. 1331 (1953). In *Polizzi*, a Florida plaintiff brought a libel action against the defendant, an Iowa corporation, in the Circuit Court of Dade County, Florida. The defendant removed the action to the U.S. District Court for the Southern District of Florida and then moved to dismiss the action. The lower courts both held that defendant was not "doing business" in Florida under 28 U.S.C. § 1391, the general venue statute. In this regard, the Supreme Court stated:

> But even on the question of venue, § 1391 has no application to this case because this is a removed action. The venue of removed actions is governed by 28 U.S.C. (Supp. V) § 1441(a), 28 U.S.C.A. § 1441(a), and under that section venue was properly laid in the Southern District of Florida. * * * The pertinent provisions of the two statutes are set forth in the margin. Section 1391(a) limits the district in which an action may be "brought." Section 1391(c) similarly limits the district in which a corporation may be "sued." This action was not "brought" in the District Court, nor was Respondent "sued" there; the action was *brought* in a state court and *removed* to the District Court. Section 1441(a) expressly provides that the proper venue of a removed action is "the district court of the United States for the district and division embracing the place where such action is pending." The Southern District of Florida is the district embracing Dade County, the place where this action was pending. 28 U.S.C. (Supp. V) § 89, 28 U.S.C.A. § 89.

Therefore, the question whether Respondent was "doing business" in Florida

within the meaning of § 1391(c) is irrelevant, and the discussion of that question is beside the point.

*Id.* at 665–66, 73 S.Ct. at 902 [citations and footnotes omitted]. Thus, according to *Polizzi*, it is irrelevant if either the federal court or the state court would have initially been a proper forum for venue purposes when actions have been removed pursuant to 28 U.S.C. § 1441(a). 14 Wright, Miller & Cooper, *Federal Practice & Procedure* § 3726 at 676–77 (1975). Thus, even assuming that venue was initially improper in Ramsey County, the venue is now proper under 28 U.S.C. § 1441(a), and defendant's motion on this ground must be denied.

## B. SERVICE OF PROCESS

On December 8th, plaintiff caused a copy of the summons and complaint in this action to be served on Mrs. Kirkevold at the Kirkevolds' Woodbury, Minnesota home. By the 8th, defendant Kirkevold had been employed and had resided in California for close to a week. On the 9th, Mrs. Kirkevold sent the papers to Verbatim in California, where her husband promptly received actual notice of the pendency of the action.

As noted, this action was commenced in state court. Rule 4.03 of the Minnesota Rules of Civil Procedure for the District Courts, which is operative here,[1] provides in relevant part:

> Service of summons within the state shall be made as follows:
>
> (a) Upon an Individual. Upon an individual by delivering a copy to him personally or by leaving a copy at his usual place of abode with some person of suitable age and discretion then residing therein.

The issue here is whether the substituted service on Mrs. Kirkevold at the Kirkevolds' Minnesota home amounted to service at the defendant's "usual place of abode" so as to comply with the rules governing service of process. Defendant Kirkevold contends that because he had departed a week earlier

for California with the intent to make California his permanent home, the jointly owned Woodbury home was no longer his "usual place of abode" and therefore the service was ineffective.

In *Karlsson v. Rabinowitz*, 318 F.2d 666 (4th Cir. 1963), the Court of Appeals for the Fourth Circuit upheld such substituted service under remarkably similar circumstances. In *Karlsson*, the defendant left his family behind in Maryland to begin his new employment in Arizona. The defendant left Maryland about July 5, 1962, with the intention of making Arizona his permanent home. The defendant's wife, like Mrs. Kirkevold, remained behind in Maryland to complete moving arrangements and be present at the closing of the sale of their Maryland home. Approximately 3 weeks after the defendant left for Arizona, his wife was served with process at their Maryland home. The *Karlsson* court upheld this substituted service, and found that defendant's Maryland home still amounted to his "usual place of abode" for purposes of service of process. In reaching this conclusion, the *Karlsson* court indicated that where actual notice of the action has been received by the intended recipient, the rules governing such service should be liberally construed. *Id.* at 668. *See Capital Life Ins. Co. v. Rosen*, 69 F.R.D. 83 (E.D.Pa.1975); *Tart v. Hudgins*, 58 F.R.D. 116 (M.D.N.C.1972); *Blackhawk Heating & Plumbing Co. v. Turner*, 50 F.R.D. 144 (D.Ariz.1970); Fed.R. Civ.P. 1. Further, the *Karlsson* court rejected the notion that the intention of the defendant to return or not to return to his former home was not dispositive, but merely a factor in the analysis of whether the method of service employed was likely to provide actual notice of the commencement of the action.

The Minnesota Supreme Court interpreted Rule 4.03 of the Minnesota Rules of Civil Procedure for the District Courts in accordance with *Karlsson v. Rabinowitz*, *supra*, under similar circumstances in *Walker Em-*

---

1. Federal Rule of Civil Procedure 4(d)(1) allows such substituted service to be accomplished by serving a person of suitable age and discretion

at the defendant's "dwelling house or usual place of abode. . . ."

ployment Service, Inc. v. Swanson, 278 Minn. 368, 154 N.W.2d 823 (1967). In *Walker*, the defendant left his wife behind in their jointly owned Eden Prairie, Minnesota residence and drove to Michigan to begin his new employment. On the day defendant left, his wife was served with process at their Eden Prairie home some six hours after defendant departed. The defendant's wife had remained behind to complete the details of moving and presumably to assist in the sale of their home. The Minnesota court upheld this substituted service, and stated:

> We believe the correct interpretation of the rule to be that the home where a man has resided with his wife continues to be his usual place of abode even though he has left it to go elsewhere when, as here, his wife continues to live in their house to further their mutual interest in the completion of moving arrangements and the process is left with her at a time when he is en route to a new place of joint abode. Such a construction of the rule seems sensible to us, and we are satisfied that the method of service thus allowed is one reasonably calculated to bring actual notice of the action to defendant's attention.

*Id.* at 369, 154 N.W.2d at 824; *see Goldsworthy v. State Dept. of Public Safety*, 268 N.W.2d 46, 48 (Minn.1978) (interpreting *Walker* as holding that "the Minnesota home continued to be his usual place of abode because his wife remained in the home to further their mutual interest").

The Court has concluded that under the circumstances present here, the method of service employed by plaintiff was reasonably calculated to provide actual notice to defendant Kirkevold, as in *Walker*, and therefore should be upheld. As defendant Kirkevold received prompt actual notice of the pendency of this action, the rules governing service should be liberally construed to uphold the service. *Karlsson v. Rabinowitz*, 318 F.2d 666 (4th Cir. 1963); *Capital Life Ins. Co. v. Rosen*, 69 F.R.D. 83 (E.D.Pa. 1975); *Tart v. Hudgins*, 58 F.R.D. 116 (M.D. N.C.1972); *Blackhawk Heating & Plumbing Co. v. Turner*, 50 F.R.D. 144 (D.Ariz.1970). At the time the service was accomplished here, the Kirkevolds' Woodbury home was owned by both defendant and his wife. Mrs. Kirkevold had remained in Minnesota to assist in the sale of their home, to assist in the moving arrangements, and thereby undeniably to "further their mutual interest[s]." *Walker Employment Service, Inc. v. Swanson*, 278 Minn. 368, 369, 154 N.W.2d 823, 824 (1967). Moreover, while defendant Kirkevold fully intended to make California his present home at the time the service was effected, this factor is not of overriding importance in the determination of whether the method of service employed was reasonably likely to provide actual notice of the pendency of the action. Furthermore, it does not necessarily follow that the defendant intended to never return to Minnesota, and the Court finds it difficult to believe that in the normal course of events the defendant would not have returned to his Woodbury home to assist in moving his family to California or to aid in the sale of his Woodbury home.[2] Under the circumstances, the Court has determined that the defendant's Woodbury home amounted to his "usual place of abode" in this transition period for purposes of service of process, and therefore the method of service employed here was permissible.

It is not necessarily inconsistent to find that defendant Kirkevold is a California domiciliary for diversity purposes while still having his "usual place of abode" for purposes of service of process in Minnesota. Not only are the concepts involved theoretically distinct, but the purposes underlying diversity of citizenship jurisdiction on the one hand and service of process on the other are wholly different. While one's intent to make a state his present and future home is absolutely critical for purposes of determining domicile and therefore di-

---

2. This conclusion does not affect the Court's determination that Kirkevold has become a domiciliary of California, as there is no require-ment that a person intend to remain in his new domicile permanently. *Janzen v. Goos*, 302 F.2d 421 (8th Cir. 1962).

versity, that same intent is simply a factor of marginal weight in determining whether one's recent former home still amounts to one's "usual place of abode" for service of process purposes. *Karlsson v. Rabinowitz,* 318 F.2d 666 (4th Cir. 1963). Nor is the spouse's role in remaining at the jointly owned residence to further their mutual interest, such as Mrs. Kirkevold here, of much relevance in the determination of whether the other spouse has changed his or her domicile. In short, the term "usual place of abode" is "not necessarily synonymous with 'domicile'." *Neher v. District Court for the Fourth Judicial District,* 161 Colo. 445, 422 P.2d 627, 628 (1967). *See State ex rel. Merritt v. Heffernan,* 142 Fla. 496, 195 So. 145, 147–48 (1940) (in upholding service over a defendant who had departed from Florida while leaving his family behind, the court indicated that it did "not hold the view that Florida was the permanent residence of the defendant, but we do feel that in the circumstances reflected in the record, it was his usual place of abode in contemplation of that expression as used in the statute"). The purpose of using domicile as the basis for determining diversity, as opposed to broader concepts such as residence or usual place of abode, is consistent with the constitutional policy of limited jurisdiction, which in turn requires that statutes granting jurisdiction to the federal courts be strictly construed. *Healy v. Ratta,* 292 U.S. 263, 54 S.Ct. 700, 78 L.Ed. 1248 (1934); *Janzen v. Goos,* 302 F.2d 421 (8th Cir. 1962). On the other hand, the concepts used in the rules governing service of process are utilized for the purpose of providing a likelihood of bringing actual notice to the intended recipient. As such, different considerations are relevant, and it is simply not inconsistent under these circumstances to be domiciled in one state and also have one's "usual place of abode" for purposes of service of process in another state. To hold otherwise under the present circumstances would require this Court to ignore the practicalities of modern day transitions and mobility from one state to another.

For the reasons outlined above, IT IS HEREBY ORDERED that plaintiff's motion to remand is denied and defendant Kirkevold's motion to dismiss or alternatively to quash service of process be and hereby is denied.