769 So.2d 890 (2000)
NORTHBROOK INDEMNITY COMPANY
v.
WESTGATE, LTD., a partnership, d/b/a Westgate Shopping Center.
1980619.
Supreme Court of Alabama.
April 21, 2000.
Davis Carr, Paul V. Lagarde, and Kathleen Cobb Kaufman of Carr, Alford, Clausen & McDonald, L.L.C., Mobile; and Kenneth T. Fuller of Cassady, Fuller & Marsh, Enterprise, for appellant.
Bibb Allen, John M. Laney, Jr., and Deborah Alley Smith of Rives & Peterson, P.C., Birmingham, for appellee.

*891 On Application for Rehearing

SEE, Justice.
The opinion of November 24, 1999, is withdrawn, and the following is substituted therefor.
The defendant, Northbrook Indemnity Company ("Northbrook"), appeals from an order denying its Rule 60(b), Ala. R. Civ. P., motion for relief from a default judgment in favor of the plaintiff, Westgate, Ltd. ("Westgate"). Northbrook suffered a default judgment in the amount of $1,167,000, including $1 million in punitive damages, after it failed to answer Westgate's complaint. Northbrook argues that the judgment is void because, it says, Westgate did not properly serve process on Northbrook. We agree, and we reverse and remand.

I.
Westgate owns a shopping center in Enterprise. The shopping center was damaged by Hurricane Opal in October 1995. At the time, Westgate had in effect an insurance policy issued by Northbrook that covered the shopping center for the period June 1995 through June 1996.[1] Westgate filed claims based on property damage and loss of rent that resulted from the hurricane. Northbrook paid some of Westgate's claims, but refused to pay Westgate's claim for $2,000 for an air conditioner starter and its claim for $15,000 for lost rent. Westgate alleges that Northbrook's failure to pay the disputed $17,000 ruined Westgate's relationship with its lender and caused Westgate to have to refinance with another lender, an arrangement that Westgate alleges will cost it $150,000 more than the financing arrangement it says it lost. Westgate had outstanding debt that was secured by the shopping-center property, and its loss of rental income while the shopping center was undergoing repairs exacerbated preexisting cash-flow problems.
When Northbrook insured Westgate, Northbrook was a wholly owned subsidiary of Allstate Insurance Company ("Allstate"). Allstate's home office was at 51 West Higgins Road, South Barrington, Illinois. Northbrook's home office was also listed at this address in Westgate's 1995-96 insurance policy. Allstate had authorized a courier service, Amigo Delivery Service, to sign for and pick up, at the South Barrington post office, all mail addressed to 51 West Higgins Road and to deliver it to the mail room at 51 West Higgins Road.
Effective August 1, 1996, Allstate sold Northbrook to St. Paul Insurance Company ("St. Paul"). After the sale, Northbrook moved its activities from 51 West Higgins Road to other locations. After December 1997, Northbrook had no employees at 51 West Higgins Road and no longer conducted business at that address. Neither Allstate nor Northbrook changed the arrangement whereby Amigo Delivery Service employees would sign for and pick up all mail addressed to 51 West Higgins Road. However, Northbrook had arranged with Allstate for it to forward to St. Paul's home office in Minnesota all mail addressed to Northbrook at 51 West Higgins Road. St. Paul's company policy is that papers in any action against Northbrook filed in the United States and relating to a claim from Alabama are to be sent to St. Paul's regional claims office in Atlanta, Georgia. St. Paul's Atlanta regional claims office maintains a "suit log" and a "suit binder." St. Paul's policy is to list in the suit log all lawsuits for which the regional claims office receives process and to place a copy of those documents in the suit binder.
On February 6, 1998, Westgate sued Northbrook, asserting claims based on an alleged breach of an insurance contract and an alleged bad-faith failure to pay insurance claims, and seeking compensatory and punitive damages. Westgate requested the court to direct service of process *892 on Northbrook by certified mail at the 51 West Higgins Road address. On February 12, 1998, Hector Ramon, an Amigo Delivery Service employee, signed the certified-mail receipt for Westgate's summons and complaint. Northbrook alleges that it does not know what happened to the summons and complaint after Ramon signed the receipt and apparently received the documents. There was no record of the summons and complaint in the suit log and no copy of those documents in the suit binder at the Atlanta regional claims office.
On May 4, 1998, Westgate applied for an entry of default against Northbrook. The court clerk entered a default that day. Westgate mailed a copy of its application for entry of default to Northbrook at the 51 West Higgins Road address. On June 18, 1998, Westgate applied for a judgment based on the default. Westgate mailed a copy of its application for entry of judgment to Northbrook at the 51 West Higgins Road address. On July 10, the trial court held an evidentiary hearing, at which Westgate offered evidence to support its claims. At the conclusion of that hearing, the court entered against Northbrook a default judgment in the amount of $1,167,000. The court clerk, by certified mail addressed to 51 West Higgins Road, attempted to serve Northbrook with a copy of the default judgment. On July 30, Hector Ramon signed a certified-mail receipt for that copy.
On September 16, 1998, Northbrook moved the court for Rule 60(b), Ala. R. Civ.P., relief from the default judgment. The trial court denied the motion, holding that Northbrook had offered no evidence to support a finding that its failure to answer the complaint was due to excusable neglect.[2] On January 6, 1999, Northbrook filed a notice of appeal from the trial court's order denying its motion to set aside the default judgment.

II.
Northbrook argues that the trial court erred in denying its motion for relief from the default judgment, because, it argues, the judgment is void. See Rule 60(b)(4), Ala. R. Civ.P.[3] Specifically, Northbrook argues that Westgate did not serve process on it in accordance with Rule 4(c)(6), Ala. R. Civ.P. Rule 4(c) provides:
"Service of process ... shall be made as follow:
". . . .
"(6) ... Upon a corporation, either domestic or foreign, by serving the agent authorized by appointment or by law to receive service of process or by serving the corporation by certified mail at any of its usual places of business or by serving an officer or an agent of the corporation...."
*893 Northbrook asserts that Hector Ramon was not authorized by appointment or by law to receive service of process for Northbrook, that Ramon was not an officer or agent of Northbrook, and that 51 West Higgins Road was not one of Northbrook's usual places of business at the time Ramon signed for Westgate's summons and complaint.
This Court has held that "[t]he review applicable to a Rule 60(b)(4) motion is de novo." Greene v. Connelly, 628 So.2d 346, 351 (Ala.1993); accord Insurance Management & Admin., Inc. v. Palomar Ins. Corp., 590 So.2d 209, 212 (Ala.1991).
"When the grant or denial of relief turns on the validity of the judgment, as under Rule 60(b)(4), discretion has no place. If the judgment is valid, it must stand; if it is void, it must be set aside. A judgment is void only if the court rendering it lacked jurisdiction of the subject matter or of the parties, or if it acted in a manner inconsistent with due process."
Palomar Ins., 590 So.2d at 212. "Failure of proper service under Rule 4 deprives a court of jurisdiction and renders its judgment void." Ex parte Pate, 673 So.2d 427, 428-29 (Ala.1995).
Westgate does not contend that Ramon was "authorized by appointment or by law to receive service of process" for Northbrook, or that Ramon was "an officer or an agent" of Northbrook. Therefore, we do not address those issues. See Jackson v. Reed, 438 So.2d 750, 753 (Ala.1983) (stating that this Court should not act sua sponte in addressing and deciding an issue not framed by the pleadings, where the issue is not of great public importance or of any great jurisprudential importance). Westgate does, however, argue that 51 West Higgins Road was one of Northbrook's "usual places of business." Rule 4(c)(6), Ala. R. Civ.P. Northbrook denies that 51 West Higgins Road was one of its usual places of business at the time Ramon signed for the summons and complaint.[4]
This Court has not addressed the issue of what constitutes a corporation's "usual place[] of business" for purposes of Rule 4. However, we are not without guidance from other jurisdictions on this issue. In Paramount Packaging Corp. v. H.B. Fuller Co., 190 F.Supp. 178 (E.D.Pa.1960), a federal district court held that the office of a telephone-answering service that answered calls for a particular corporation was not the corporation's usual place of business, even though the corporation had represented that it had an office at the address of the answering service and even though it received mail at that address. 190 F.Supp. at 180-81. The court reasoned that because the defendant had no employees at the answering service's office and none of the answering service's employees was authorized to act for the defendant, other than to receive its mail and answer its telephone calls, the corporation was not doing business at that office. Id. at 180.
Westgate argues that LSJ Investment Co. v. O.L.D., Inc., 167 F.3d 320 (6th Cir. *894 1999), and Blackhawk Heating & Plumbing Co. v. Turner, 50 F.R.D. 144 (D.Ariz. 1970), are analogous to this case. In LSJ Investment, as in this case, the parties disputed whether the address at which service on a corporate defendant was attempted was the usual place of business for the corporation. See 167 F.3d at 323. The plaintiff attempted to serve the corporation at an address that a corporate officer repeatedly gave as the corporation's business address. See id. at 323. Although the corporation argued that the address was not its usual place of business, the United States Court of Appeals for the Sixth Circuit affirmed the trial court's denial of the defendant corporation's motion for relief from judgment, holding that the trial court could reasonably have concluded that the address was in fact the corporation's office. At least three facts distinguish LSJ Investment from the present case: (1) in LSJ Investment, the record indicated that the corporate defendant had purposely evaded service; (2) in LSJ Investment, the corporate defendant had actual knowledge of the lawsuit; and (3) in LSJ Investment, the corporate defendant had not moved from the address where service of process was attempted to another address. Instead, the corporation simply argued that an address given out by a corporate officer as the corporation's business address was not in fact its business address. See id. Thus, LSJ Investment is not analogous to this case.
In Blackhawk Heating, the plaintiff attempted service of process on an individual defendant by leaving the process documents with the defendant's adult daughter at an apartment. The defendant argued that that apartment was not his "residence or usual place of abode." 50 F.R.D. at 147. The defendant claimed that he had previously moved from the apartment and had done so with the intent never to return. Id. at 145. However, other facts indicated that the apartment was still the defendant's residence. Id. at 147. The defendant still paid rent for the apartment, still had his furniture in the apartment and his automobiles nearby, still received mail at the apartment, and had not notified the apartment manager of a move. Id. As in LSJ Investment, the defendant in Blackhawk Heating had evaded service and had had actual knowledge of the lawsuit against him. Id. at 145. Thus, Blackhawk Heating is distinguishable from the present case.
The present case is analogous to Paramount Packaging. It is undisputed that when service of process was attempted, Northbrook had no employees at 51 West Higgins Road and it had ceased doing business at that address. Moreover, nothing in the record indicates that any of Allstate's agents or employees were authorized to transact business on Northbrook's behalf at that address. Accepting and forwarding mail is not doing business. See Paramount Packaging, 190 F.Supp. at 180. In short, the record contains no substantial evidence to support a finding that 51 West Higgins Road was one of Northbrook's usual places of business at the time of the attempted service of process.[5] Thus, the attempted service on Northbrook at that address did not comply with Rule 4(c)(6), Ala. R. Civ.P., and the default judgment entered against Northbrook is void. See Ex parte Pate, 673 So.2d at 428-29. Because the default judgment against Northbrook is void, we reverse the trial court's order denying Northbrook's Rule 60(b) motion for relief from the default judgment and remand the case for further proceedings.[6]
OPINION OF NOVEMBER 24, 1999, WITHDRAWN; OPINION SUBSTITUTED; APPLICATION OVERRULED; REVERSED AND REMANDED.
*895 HOOPER, C.J., and MADDOX, HOUSTON, COOK, LYONS, BROWN, and ENGLAND, JJ., concur.
JOHNSTONE, J., dissents.
JOHNSTONE, Justice (dissenting).
I respectfully dissent. Northbrook is estopped to deny that the very address Northbrook supplied as its "home office" address on the very insurance policy issued to Westgate and invoked by Westgate as the basis of this claim against Northbrook, is one "of its usual places of business" for service of process under Rule 4(c)(6), Ala. R. Civ.P. Considering the extremes to which this Court binds policyholders to policy language, see, e.g., McDougle v. Silvernell, 738 So.2d 806 (Ala. 1999), and the special writings therein,[7] we cannot excuse Northbrook from its own express representation in its own policy.
NOTES
[1] Westgate did not have a policy of insurance with Northbrook when it filed this lawsuit.
[2] On December 14, 1998, Northbrook moved the trial court for a hearing based on the principles and procedures established for considering a defendant's claim that an award of punitive damages is excessive. See Hammond v. City of Gadsden, 493 So.2d 1374 (Ala.1986); Green Oil Co. v. Hornsby, 539 So.2d 218 (Ala.1989); and BMW of North America, Inc. v. Gore, 517 U.S. 559, 116 S.Ct. 1589, 134 L.Ed.2d 809 (1996). However, because this motion was not filed within 30 days after the entry of the judgment, it was untimely, and the trial court was without jurisdiction to entertain it. See Rules 55(c) and 59(e), Ala. R. Civ.P.
[3] Rule 60(b) provides in part:

"On motion and upon such terms as are just, the court may relieve a party or a party's legal representative from a final judgment, order, or proceeding for the following reasons: (1) mistake, inadvertence, surprise, or excusable neglect; (2) newly discovered evidence which by due diligence could not have been discovered in time to move for a new trial under Rule 59(b); (3) fraud (whether heretofore denominated intrinsic or extrinsic), misrepresentation, or other misconduct of an adverse party; (4) the judgment is void; (5) the judgment has been satisfied, released, or discharged, or a prior judgment upon which it is based has been reversed or otherwise vacated, or it is no longer equitable that the judgment should have prospective application; or (6) any other reason justifying relief from the operation of the judgment."
(Emphasis added.)
[4] Westgate, relying on Insurance Management & Administration, Inc. v. Palomar Insurance Corp., supra, argues that Northbrook had the burden of proving by clear and convincing evidence that 51 West Higgins Road was not one of its usual places of business. We disagree. In Palomar Insurance, this Court held that a presumption of service in accordance with Rule 4.2(b)(1), Ala. R. Civ. P., arises upon a showing of the certified-mail return receipt and "the circuit court clerk's notation [on the docket sheet] that the process has been properly mailed." 590 So.2d at 213. To rebut this presumption, the challenging party "bears the burden of establishing lack of service by clear and convincing evidence." Id. Thus, Palomar Insurance merely establishes a presumption of compliance with Rule 4.2(b)(1); that is, that the court clerk mailed the process and the person signing the certified-mail receipt received the process. Palomar Insurance does not establish a presumption that a defendant was served in compliance with Rule 4(c), which indicates "upon whom process [is to be] served." Thus, Northbrook did not bear the burden of proving by clear and convincing evidence that 51 West Higgins Road was not one of its usual places of business.
[5] The insurance policy on which Westgate relied for using 51 West Higgins Road as Northbrook's address for service of process had expired on June 12, 1996. That was 20 months before February 12, 1998, when service was attempted.
[6] Our conclusion makes it unnecessary for us to address these other arguments by Northbrook: (1) that the trial court abused its discretion in denying its motion for relief from judgment, under the factors set forth in Kirtland v. Fort Morgan Authority Sewer Service, Inc., 524 So.2d 600 (Ala.1988); (2) that the trial court erred in not reviewing the punitive-damages award under the factors set forth in BMW, Hammond, and Green Oil (see n. 2); and (3) that the trial court violated Northbrook's due-process rights guaranteed by the Constitution of the United States and the Constitution of Alabama by awarding Westgate punitive damages even though Northbrook had had no actual notice of the lawsuit.
[7] In McDougle v. Silvernell this Court bound the holder of a title insurance binder to arbitration provisions in a title insurance policy not even issued to, much less received by, the binder holder when he closed his purchase of the land. The rationale of the majority was that the binder, which did not mention arbitration, incorporated by reference "the insuring provisions, the Exclusions from Coverage and the Conditions and Stipulations of the form of policy or policies committed for in favor of the proposed insured."