BOLIN, Justice.
Timothy C. Allsopp appeals from the trial court’s denial of his Rule 60(b)(4), Ala. *954 R. Civ. P., motion for relief from a judgment entered in favor of James A. Bolding and Kisha Bolding.
Specifically, Allsopp contends that the judgment is void because⅛ he argues, he was not properly served with notice.

Facts and Procedural History

On January 31, 2008, the Boldings sued Naysa Realty and Investments, LLC, De-leana Davis, Keller-Williams Realty Co., and Allsopp. The Boldings alleged breach of fiduciary duty, and three counts of fraud, arising out of real-estate transactions in Madison County. Davis is a principal in Naysa Realty and is employed by Keller-Williams as a real-estate agent. Davis advised the Boldings, who were purchasing property, to give Allsopp power of attorney to sign certain closing documents on their behalf.
The Boldings amended their complaint to add claims of negligence and negligent hiring, training, and supervision against Keller-Williams. They also “properly designated” Keller-Williams as Classic Madison, LLC, d/b/a Keller-Williams Realty. Davis and Naysa Realty moved to compel arbitration of the claims against them based on the Boldings’ real-estate sales contracts, which the trial court granted.[1] A default judgment was entered against Allsopp, with leave for the Boldings to prove damages against him later. The Boldings entered into a settlement agreement with Classic Madison, and it was subsequently dismissed as a party.
On October 27, 2010, Allsopp filed his Rule 60(b), Ala. R. Civ. P., motion for relief from the default judgment, alleging that he had not been properly served. On December 3, 2010, the trial court held a hearing on the motion. At the hearing, Allsopp testified that he was residing in Georgia with his parents on April 30, 2008, the day the summons and complaint were hand-delivered to Davis at her residence on Stage Coach Drive in Madison. He stated that he had been dating Davis since 2004 and that he spent “a fair amount” of time with her, but he denied residing with her in that house. Allsopp testified that he had a valid Georgia driver’s license. He stated that he and Davis “broke up” in December 2007 and reconciled October 2008. Allsopp testified:
“Q. [Allsopp’s attorney:] And in 2008 were you in and out of Alabama at all up until the time they say you were served?
“A. No, not up until the time they say that I was served. I was not.”
A credit-card receipt reflected that Allsopp made a charge in Huntsville on May 1, 2008. Allsopp testified that he and Davis married on March 21, 2009, and that they now reside on Jordan Lane in Huntsville. Allsopp testified that he did not have a job in 2008.
Allsopp testified regarding his involvement with the Boldings:
“Q. [The Boldings’ attorney:] Yeah. Well, [Davis] got you to — she got my clients, the Boldings, I’m assuming with your knowledge, to sign a power of attorney for three separate real estate closings naming you as power of attorney. Your girlfriend did that. That’s how you got involved in this in the first place, correct?
“A. With their permission, that’s correct.
“Q. Okay. And so they go to three real estate closings, never — they’ve never been to a real estate closing. But you go, allegedly on their behalf, and sign some documents on their behalf with them never being there. That’s *955 how you got involved in this, correct? Because you were designated by your girlfriend, Ms. Davis, who is a defendant, as power of attorney to sign the name for the Boldings, the plaintiffs?
“A. Actually I was designated by a notary which was related to the Bold-ings who authorized the power of attorney which was prepared by the closing attorney. Ms. Davis did not authorize it. They authorized it, which was notarized by his sister-in-law. And so his sister-in-law notarized the document that he authorized providing me permission to do power of attorney on their transactions they consented to. That’s what happened.
“Q. Mr. Allsopp, the Boldings didn’t know you from Adam’s house cat before they signed a real estate transaction with your girlfriend, now your wife, miss whatever her name is at the time. They didn’t know you. You never met them. You didn’t have a clue who they were. Isn’t that correct?
“A. That’s correct.”
Allsopp’s father testified that Allsopp lived at his house in Atlanta from December 2007 to the late summer of 2008. He testified that he did not know if Allsopp was in Atlanta on April 30, 2008.
Davis testified that she and Allsopp had been dating since 2004 but that she and Allsopp were not dating on April 30, 2008. She stated that she was involved with another man at the time service of process was made in this case. Davis testified that the man she was involved with was at her house on Stage Coach Drive on April 30, 2008, between 10:00 p.m. and 12:00 a.m., when the process server arrived. Davis testified that the next day she reported the “service” to the Madison County Sheriff. Davis stated that Allsopp never spent the night at her house before their marriage because she had a minor child from a previous marriage living with her. She stated that before April 30, 2008, Allsopp had been to her house approximately 25 times. At an earlier deposition, Davis stated that she and Allsopp had reconciled and that they were engaged.
The process server testified that he tried to serve Allsopp twice at a residence on Jordan Lane. He testified that on April 30, 2008, he delivered a copy of the summons and complaint to an address on Stage Coach Drive, in Madison. Davis resided at that address. Davis answered the door when the process server knocked, and he could see a man standing inside the house. The process server had discovered that Davis was Allsopp’s girlfriend and that Allsopp did real-estate work with her. The process server asked if Allsopp resided at the address and Davis responded that he did. The process server testified as follows:
“A. All right. I did make several attempts to catch them there. When I did finally — when , I did finally catch them — someone at home, I went to the front door and rang the doorbell. And Ms. Davis — I saw her out in the hallway, answered the door. And Mr. Allsopp was in another room but it was in eye— eyesight, excuse me, of the front door. I could see him there. And I asked if he resided there. She said, Yes.’ And, T have these papers to serve.’ And I, at that point, handed them to Ms. Davis.
“Q. [The Boldings’ attorney:] All right. Now, you see this guy right here?
“A. Yes.
“Q. Is that the guy you saw through the door at that residence that night?
“A. Yes.
“Q. All right. Now, let’s do you know anything about a Dewayne (sic) Johnson or somebody else that you *956 served papers on that night or anything of that nature?
“A. No.
“Q. All right. And you handed the papers to her?
“A. Yes. With him there, yes.
“Q. All right. And what, if anything, did you say and then what did she say?
“A. Well, I just said, more or less ‘These papers are service papers for Timothy Allsopp and just see that he gets them.’
[[Image here]]
“Q. Okay. And where was this room that you saw Mr. Allsopp in?
“A. At the end of that foyer, hallway, whichever you describe the room or would call that.
“Q. Okay. How far away was he from you?
“A. Maybe as far as from here to that second railing back there.
“Q. Would that be about 35, 40 feet?
“A. I would imagine. I’m not good judge of distances like that. But that looks like maybe about that.
“Q. Why did you not step inside and hand him the papers?
“A. It’s not my place to enter someone’s home, especially in that situation, if I’m not invited.
“Q. Well, if she said. ‘He’s here,’ and you were there to serve papers why didn’t you say. ‘Well, I need to hand these to him’?
“A. The — I guess the attempts that I had made and hearing that it may be trouble to, you know, to get this serve done. When I asked—
“Q. Well, you indicated that when she opened the door you asked something about was he there and she said, ‘He lives here’?
“A. Uh-huh. (Affirmative.)
“Q. Was there any indication [of] anybody refusing access to hand him the papers if he’s right there in front of you?
“A. I did not ask to go in. It’s my job to get the papers served to the person or to an adult living in the same premises — or address, excuse me.
[[Image here]]
“Q. Well, what do you do when you walk up to somebody to serve papers and they don’t take the papers? What do you normally do?
“A. 'Lay them at their feet and say, ‘You’ve been served.’
“Q. Okay. Did you do that?
“A. My recollection I handed them to Ms. Davis.
“Q. Okay. Well, if you saw Mr. All-sopp there why didn’t you say ‘I served Mr. Allsopp’ in your return and lay them in the front door? Because you saw him right there, from your testimony.
“A. Could you repeat that, please?
“Q. Your testimony was that when you walked to the screen door, front door, you opened the door and you saw him from here to about that chair right there?
“A. From here?
“Q. Yes, sir. And supposedly what your testimony was he was identified to you as Mr. Allsopp. And yet your return says you served Ms. Davis, not Mr. Allsopp. Is that correct?
“A. Yes, I served Ms. Davis. She was the person at the door.
“Q. Why didn’t you on the return say T served Mr. Allsopp because I left them there in his front where he could see him’ and he was straight in front of you. What’s the difference?
“A. What is the difference in — I don’t follow you.
*957 “Q. Well, if your practice was if somebody doesn’t take the papers you put them at their feet and say you’ve been served.
“A. Correct.
“Q. Why didn’t you say to Mr. All-sopp, You’ve been served,’ or lay them there in front of him and exit the property?
“A. Because I was not speaking directly to Mr. Allsopp. He’s not the one that answered the front door.
“Q. But you saw him there' in front of you and he was the one there you were to serve; is that correct?
“A. Correct—
“Q. And you served somebody else with the papers?
“A. Correct.”
According to the process server, Davis cursed at the process server and threatened to contact the police and charge the process server with trespass. The process server then handed the summons and complaint to Davis. After he was out of “harm’s way,” the process server stated that he completed the return-of-service notice, marking the notice as delivered to “Deleana Davis, live-in partner” of Allsopp. The process server identified Allsopp as the man who was standing inside Davis’s house when he served notice of the action.
On December 9, 2010, the trial court denied Allsopp’s motion. On January 14, 2011, Allsopp appealed.

Standard of Review

Rule 60(b)(4), Ala. R. Civ. P., provides for relief from a judgment when that judgment is void. Generally, this Court reviews a trial court’s ruling on a Rule 60(b) motion to determine whether the trial court exceeded its discretion. However, with regard to Rule 60(b)(4), this Court has stated:
“The standard of review on appeal from the denial of relief under Rule 60(b)(4) is not whether there has been an abuse of discretion. When the grant or denial of relief turns on the validity of the judgment, as under Rule 60(b)(4), discretion has no place. If the judgment is valid, it must stand; if it is void, it must be set aside. A judgment is void only if the court rendering it lacked jurisdiction of the subject matter or of the parties, or if it acted in a manner inconsistent with due process. Satterfield v. Winston Industries, Inc., 553 So.2d 61 (Ala.1989).”
Insurance Mgmt. & Admin., Inc. v. Palomar Ins. Corp., 590 So.2d 209, 212 (Ala.1991). In other words, if the underlying judgment is void because the trial court lacked subject-matter or personal jurisdiction or because the entry of the judgment violated the defendant’s due-process rights, then the trial court has no discretion and must grant relief under Rule 60(b)(4). This Court reviews de novo the trial court’s decision on a Rule 60(b)(4) motion to set aside a judgment as void, because the question of the validity of a judgment is a question of law. Orix Fin. Servs., Inc. v. Murphy, 9 So.3d 1241, 1248 (Ala.2008)(Murdock, J., concurring specially). Notwithstanding our de novo review, in his special writing in Orix, Justice Mur-dock recognized that when a trial court, in ruling on a Rule 60(b)(4) motion, makes factual findings implicating the ore tenus rule, the trial court’s factual findings are entitled to some deference by this Court. In Ethridge v. Wright, 688 So.2d 818 (Ala. Civ.App.1996), the Court of Civil Appeals applied the ore tenus rule to oral testimony heard by the trial court regarding service of process challenged pursuant to *958 Rule 60(b)(4).[2]
The ore tenus rule affords a presumption of correctness to a trial court’s findings of fact based on ore tenus evidence, and the judgment based on those findings will not be disturbed unless those findings are clearly erroneous and against the great weight of the evidence. Reed v. Board of Trs. for Alabama State Univ., 778 So.2d 791, 795 (Ala.2000). It is grounded upon the principle that when a trial court hears oral testimony it has an opportunity to evaluate the demeanor and credibility of the witnesses. Hall v. Mazzone, 486 So.2d 408, 410 (Ala.1986). The ore tenus rule does not cloak a trial court’s conclusions of law or the application of the law to the facts with a presumption of correctness. Kennedy v. Boles Invs., Inc., 53 So.3d 60 (Ala.2010).
In the present case, the trial court heard oral testimony concerning the sufficiency of service of process on Allsopp. In accordance with our well settled standard regarding a Rule 60(b)(4) motion challenging a judgment as void, our de novo standard of review applies. However, because the trial court heard oral testimony regarding disputed facts involved in the service of process, the ore tenus rule applies to our review of its factual findings.
We note that several federal courts of appeal review a district court’s decision on a Rule 60(b)(4), Fed.R.Civ.P., motion de novo, but those courts review the factual findings underlying the decision for clear error. In Securities & Exchange Commission v. Internet Solutions for Business, Inc., 509 F.3d 1161 (9th Cir.2007), the defendant filed a Rule 60(b)(4), Fed. R.Civ.P., motion to set aside a default judgment entered against him on the ground that the Commission had failed to properly serve him. The trial court found that the defendant provided insufficient evidence to prove that he was not served. In reviewing the district court’s decision, the federal appeals court stated:
“We review de novo whether default judgment is void because of lack of personal jurisdiction due to insufficient service of process. Mason v. Genisco Tech. Corp., 960 F.2d 849, 851 (9th Cir.1992). However, the ‘district court’s factual findings regarding jurisdiction are reviewed for clear error.’ Panavision Int’l, LP v. Toeppen, 141 F.3d 1316 (9th Cir.1998).”
509 F.3d at 1165. See also Goetz v. Synthesys Techs., Inc., 415 F.3d 481, 483 (5th Cir.2005) (recognizing that clear error applies to factual findings related to Rule 60(b)(4) decisions); Kelly, Sutter, Mount & Kendrick, P.C. v. Alpert, 234 Fed Appx. 246 (5th Cir.2007) (not selected for publication in the Federal Reporter) (holding that a district court’s finding of fact, following an evidentiary hearing on a Rule 60(b)(4) motion, that the defendant’s housekeeper residing in the defendant’s house was “a person of suitable age and discretion,” satisfying the service-of-process requirements, was not clear error and, therefore, affirming the district court’s judgment denying the motion).
When a trial court ruling on a Rule 60(b)(4) motion has heard oral testimony regarding the facts, we will review the trial court’s factual findings pursuant to the ore tenus rule. We will review the trial court’s conclusions of law and its applica *959 tion of the law to the underlying facts de novo.

jDiscussion

The trial court heard oral testimony regarding service of process on Allsopp. “Under the ore terms standard of review, we must accept as true the facts found by the trial court if there is substantial evidence to support the trial court’s findings.” Beasley v. Mellon Fin. Servs. Corp., 569 So.2d 389, 393 (Ala.1990). The trial court did not make specific findings of facts in its order denying Allsopp’s Rule 60(b)(4) motion. It is well settled that when the record is silent as to the trial court’s findings of fact on a disputed issue, we will assume the trial court made those findings necessary to support the judgment. Transamerica Commercial Fin. Corp. v. AmSouth Bank, N.A., 608 So.2d 375, 378 (Ala.1992).
Allsopp argues that the service of process was flawed because the process server’s return receipt indicates that the complaint was served not on him, but on Davis, his “live-in partner.” Next, Allsopp argues that Davis’s house was not his “dwelling house or usual place of abode” under Rule 4, Ala. R. Civ. P., and that the uncon-troverted evidence shows that he was residing in Georgia on April 30, 2008. All-sopp further argues that, without legal service, the trial court lacked jurisdiction to enter the default judgment against him.
Rule 4(c)(1) provides:
“Service of process except service by publication as provided in Rule 4.3 shall be made as follows:
“(1) Individual. Upon an individual, other than a minor or an incompetent person, by serving the individual or by leaving a copy of the summons and the complaint at the individual’s dwelling house or usual place of abode with some person of suitable age and discretion then residing therein or by delivering a copy of the summons and the complaint to an agent authorized by appointment or by law to receive service of process.”
Pursuant to Rule 4(c), in order for Allsopp to have been properly served, the process server had to (1) serve him in person, (2) leave the process papers at his “dwelling house or usual place of abode with some person of suitable age or discretion” residing there with him, or (3) deliver the process papers to a person authorized by appointment or by law to receive service for him.[3] In the present case, the process server testified that, when Davis opened the door, he asked if Allsopp resided there and Davis responded that Allsopp did. The process server stated that he could see a man he assumed was Allsopp standing inside the house, and he later identified Allsopp in court. The process server testified that he told Davis that he had papers to serve on Allsopp and that he then gave those papers to Davis. The process server did not attempt to hand the papers to Allsopp. We recognize that courts have upheld service when a defendant attempts to evade service, and, therefore, “in-hand” delivery is not required.[4] See Travelers Cas. & Sur. Co. v. Brenneke, 551 F.3d 1132 (9th Cir.2009) (upholding service where process server testified that, after five attempts to serve defendant, pa *960 pers were left on the front step after the defendant spoke to process server through an intercom system but refused to answer and unlock the door); Errion v. Connell, 236 F.2d 447, 457 (9th Cir.1956) (holding that service was sufficient where sheriff pitched papers through a hole in defendant’s screen door after she spoke with him and ducked behind a door to avoid service); and Slaieh v. Zeineh, 539 F.Supp.2d 864 (S.D.Miss.2008) (holding that service was sufficient where process server dropped papers in the front yard after defendant refused to accept them and attempted to walk away). Here, service of process was not attempted upon Allsopp, but upon Davis, who is undisputedly a person of suitable age and discretion and who resided in the house.
We now turn to whether All-sopp was properly served at his “dwelling house or usual place of abode” under Rule 4(c). In support of his argument that the service of process was flawed because the return of service reflected that service was upon Davis as his “live-in partner,” Allsopp cites Northbrook Indemnity Co. v. Westgate, Ltd., 769 So.2d 890, 893 (Ala.2000), for the general proposition that a judgment is void if the court rendering it lacked subject-matter jurisdiction or if the court acted in a manner inconsistent with due process. Allsopp does not discuss Northbrook and cites no other authority regarding this argument. “It is well established that general propositions of law are not considered ‘supporting authority for purposes of Rule 28. Ex parte Riley, 464 So.2d 92 (Ala.1985).” S.B. v. Saint James Sch., 959 So.2d 72, 89 (Ala.2006). This Court will not “create legal arguments for a party based on undelineated general propositions unsupported by authority or argument.” Spradlin v. Spradlin, 601 So.2d 76, 79 (Ala.1992). Further, it is well settled that “ ‘[w]here an appellant fails to cite any authority for an argument, this Court may affirm the judgment as to those issues, for it is neither this Court’s duty nor its function to perform all the legal research for an appellant.’ ” Spradlin v. Birmingham Airport Auth., 613 So.2d 347, 348 (Ala.1993)(quoting Sea Calm Shipping Co., S.A. v. Cooks, 565 So.2d 212, 216 (Ala.1990)).
In Northbrook, supra, the corporation moved to vacate a default judgment based on the lack of service of process on the ground that the office where notice was served was not one of the corporation’s “usual places of business” at that time. In Northbrook, we discussed the holding in Palomar Insurance Corp., supra, that the clerk’s notation of proper service creates a presumption of proper service that can be rebutted only by clear and convincing evidence. We noted that Palomar Insurance established only that the clerk mailed the process by certified mail under Rule 4.2(b)(1) and that the person signing the certified-mail receipt received the process. We noted that Palomar Insurance did not establish a presumption under Rule 4(c) that the person signing the receipt was a proper person to receive process or that the place of service was the defendant’s dwelling house or usual place of abode. In the present case, we recognize that the return of service does not create a presumption that Davis’s residence (where Allsopp was served) was Allsopp’s usual place of abode.
In support of his argument that Davis’s house was not his usual place of abode, Allsopp cites several case, including Bogus v. Bank of New York, 49 So.3d 719 (Ala.Civ.App.2010), and McDermott v. Tabb, 32 So.3d 1 (Ala.2009), for the proposition that the plaintiff has the burden of proving that service of process was performed legally and correctly. He cites Ex parte Pate, 673 So.2d 427 (Ala.1995), for the proposition *961 that a judgment is void if the trial court rendering it acted in a manner inconsistent with due process. He cites King v. Barnes, 54 So.3d 900 (Ala.Civ.App.2010), for the proposition that a trial court is not at liberty to ignore undisputed evidence. These cases are cited for general propositions of law regarding service, but Allsopp fails to discuss the meaning of the phrase “usual place of abode” as that phrase is used in conjunction with service of process. Instead, Allsopp simply argues that the evidence that he resided in Georgia at the time the process server hand-delivered the summons and complaint to Davis at her residence was uncontroverted.
In Hudson v. Birmingham Water Works Co., 238 Ala. 38, 189 So. 72 (1939), the sole issue was whether leaving a copy of demand for possession at the tenant’s place of business satisfied the relevant statute, which permitted a copy of demand to be left at the “usual place of abode” of the party holding over in the rented premises. This Court stated:
“In 1 Corpus Juris 304, ‘abode’ is defined as one’s fixed place of residence for the time being; the place where a person dwells. And under the treatment of the subject of ‘process’ in 50 Corpus Juris 492, numerous authorities are cited to the effect that under the language of a statute as to service of notice akin to that of our own, it is not sufficient to leave a copy of such demand at one’s place of business. See, also, 4 Words and Phrases, Second Series, p. 1112. And in the absence of any intent to the contrary, the words ‘usual place of abode’ must be given their common ordinary meaning.”
238 Ala. at 39, 189 So. at 73. In Hudson, this Court held that the place of business was not a person’s usual place of abode.
More recently, in Truss v. Chappell, 4 So.3d 1110 (Ala.2008), this Court held that the default judgment against the defendant was void because service of process was invalid where the evidence, in the form of affidavits, indicated that the defendant was served at his mother’s house. The mother’s affidavit stated that the defendant was in the armed services and that he had been called to service in Iraq and may have been overseas or “stationed” in another state at the time service was attempted. In Truss, there was no evidence before the trial court indicating that the defendant was, at the time of the alleged service, or ever had been, a resident of the particular address at which service was attempted; therefore, there was no evidence indicating that the mother’s house was the defendant’s “dwelling house or usual place of abode.”
Charles Alan Wright and Arthur R. Miller’s treatise on Federal Practice and Procedure discusses “dwelling house or usual place of abode” as follows:
“The language ‘dwelling house or usual place of abode’ in Rule 4(e)(2) is taken directly from the former Equity Rule 13. Despite the length of time these words have been a part of federal practice, the judicial decisions do not make clear precisely what they mean and the facts of a particular case often prove to be crucial. Indeed, because of today’s environment of global travel, job mobility, and multiple residences, the meaning of the phrase has been blurred even further. The majority of cases interpreting the words in the context of determining the validity of service of process appear to have focused on their literal meaning.”
4A Charles Alan Wright & Arthur R. Miller, Federal Practice & Procedure: Civil § 1096 (3d ed.2002).
Other courts have addressed the phrase “usual place of abode” in the context of service of process. A person can have more than one “usual place of *962 abode,” provided that each contains sufficient indicia of permanence. National Dev. Co. v. Triad Holding Corp., 980 F.2d 258 (2d Cir.1991) (holding that one of several houses throughout the world among which the defendant divided his time constituted a dwelling house or usual place of abode for purpose of service of process, regardless of the facts that it was not the defendant’s principal domicile and that he spent comparatively little time there). Ultimately, courts look at the facts of each particular case. Courts evaluate those facts mindful that the purpose of Rule 4 is to ensure that service is reasonably calculated to provide a defendant with actual notice of the action. Karlsson v. Rabinowitz, 318 F.2d 666 (4th Cir.1963) (holding that service was proper where a copy of the summons and complaint was left with the defendant’s wife at the defendant’s Maryland house, in which the defendant had lived before moving ahead of his family to Arizona, where he had purchased a house intending never to return to Maryland and to move his family to Arizona, noting that the service was sufficient to satisfy the requirements of service at the defendant’s “dwelling house or usual place of abode” where the service succeeded in actually apprising him of the lawsuit); Mullane v. Central Hanover Bank & Trust Co., 339 U.S. 306, 314, 70 S.Ct. 652, 94 L.Ed. 865 (1950) (holding that due process requires that “notice be reasonably calculated under all circumstances” to provide parties with notice of the pending action).
In the present case, there is evidence to support a conclusion that Allsopp had a “usual place of abode” at Davis’s residence on Stage Coach Drive at the time of service. Allsopp and Davis had dated for years and were engaged in either August or October 2008 and were married in March 2009. Allsopp stated that he was involved in the real-estate transactions that are the subject of this action and that Davis was the real-estate agent in that transaction. A receipt shows that Allsopp was in Huntsville on May 1, 2008, the day after service. We note that the process server testified that before April 30, 2008, he attempted to serve Allsopp on Jordan Lane in Huntsville, where Davis and All-sopp now reside. However, Allsopp does not argue that Jordan Lane was his usual place of abode; instead, he contends that he was residing in Georgia on April 30, 2008. The process server testified that he saw Allsopp at Davis’s house on April 30, 2008. Davis admitted that there was a man at her house on Stage Coach Drive on April 30, 2008. In addition, the trial court heard testimony from the process server, apparently without objection, to the effect that Davis answered in the affirmative when asked if Allsopp “resided” at the house on Stage Coach Drive. Accordingly, the trial court did not err in denying All-sopp’s Rule 60(b)(4) motion for relief from judgment on the ground of insufficient service because there are facts to support the trial court’s finding that Stage Coach Drive was Allsopp’s usual place of abode.
Next, Allsopp argues that the trial court erred in not ordering him to submit along with Davis and Naysa Realty to arbitration when he was the Boldings’ “agent” under the real-estate contracts.[5] Allsopp never raised his arbitration argument before the trial court. It is well settled that an appellate court may not hold a trial court in error in regard to theories or issues not presented to that court. Smith v. Equifax Servs., Inc., 537 So.2d 463 (Ala.1988); Boshell v. Keith, 418 So.2d 89 (Ala.1982). An issue may not be raised for the first time on appeal. An *963 drews v. Merritt Oil Co., 612 So.2d 409 (Ala.1992).
Based on the foregoing, we conclude that the judgment of the trial court is due to be affirmed.
AFFIRMED.
MALONE, C.J., and STUART, PARKER, MURDOCK, SHAW, MAIN, and WISE, JJ., concur.
WOODALL, J., concurs in the result.

. The attorney for Davis and Naysa Realty sent a copy of their motion to compel arbitration to Allsopp at the address for Naysa Realty-

. In Ex parte Citizens Property Insurance Corp., 15 So.3d 511 (Ala.2009), an insurer petitioned this Court for a writ of mandamus directing the trial court to vacate its order denying the insurer’s motion to dismiss for lack of personal jurisdiction. In addressing the merits of the petition, this Court noted that the trial court did not make any findings of fact based on oral testimony that might have implicated the ore tenus rule.

. No argument is made that Davis is a person authorized by Allsopp by appointment or by law to receive service on his behalf.

. It is well settled that federal decisions regarding the Federal Rules of Civil Procedure are highly persuasive when this Court is called upon to construe the Alabama Rules of Civil Procedure because the Alabama Rules of Civil Procedure are modeled upon the Federal Rules of Civil Procedure. Ex parte Full Circle Distribution, LLC, 883 So.2d 638 (Ala.2003).

. Allsopp had a power of attorney for the Boldings, but he was not a real-estate agent.