BOLIN, Justice.
Paul Kennamer and Dorothy Kennamer appeal an order entered by the Marshall Circuit Court compelling them to arbitrate their claims against Ford Motor Credit Company LLC (hereinafter “Ford Credit”) and Ray Pearman Lincoln, Inc. (hereinafter “the dealership”).

Facts and Procedural History

On November 7, 2009, the Kennamers purchased a used automobile from the dealership. As part of their purchase, the Kennamers entered into a retail-installment contract -with the dealership, which the dealership subsequently assigned to Ford Credit. The installment contract contained an arbitration provision, which provided as follows:
“Arbitration is a method of resolving any claim, dispute, or controversy (collectively, a ‘Claim’) without filing a lawsuit in court. Either you or Creditor (‘us’ or ‘we’) (each, a ‘Party’) may choose at any time, including after a lawsuit is filed, to have any Claim related to this contract decided by arbitration. Such Claims include but are not limited to the following: 1) Claims in contract, tort, regulatory or otherwise; 2) Claims regarding the interpretation, scope or validity of this clause, or arbitrability of any issue; 8) Claims between you and us, your/our employees, agents, successors, assigns, subsidiaries, or affiliates; 4) Claims arising out of or relating to your application for credit, this contract, or any resulting transaction or relationship, including that with the dealer, or any such relationship with third parties who do not sign this contract.
“RIGHTS YOU AND WE AGREE TO GIVE UP
“If either you or we choose to arbitrate a claim, then you and we agree to waive the following rights:
“RIGHT TO A TRIAL, WHETHER BY JUDGE OR JURY
“RIGHT TO PARTICIPATE AS A CLASS REPRESENTATIVE OR A CLASS MEMBER IN ANY CLASS CLAIM YOU MAY HAVE AGAINST U.S. WHETHER IN COURT OR IN ARBITRATION
*756 “BROAD RIGHTS TO DISCOVERY AS ARE AVAILABLE IN A LAWSUIT
“RIGHT TO APPEAL THE DECISION OF AN ARBITRATOR
“OTHER RIGHTS THAT ARE AVAILABLE IN A LAWSUIT
“Either Party must contact one of the associations listed below and the other Party to start arbitration. The applicable rules (the ‘Rules’) may be obtained from the association.
“American Arbitration Association (‘AAA’), at 1-800-778-7879, or www. adr.org;
“National Arbitration Forum, at 1-800-474-2871, or www.arb-forum.com
“If there is • a conflict between the Rules and this contract, this contract shall govern. This contract is subject to the Federal Arbitration Act (9 U.S.C. § 1 et seq.) and the Federal Rules of Evidence. The arbitration decision shall be in writing with a supporting opinion. We will pay your total reasonable arbitration fees and expenses (not including attorney fees, except where applicable law otherwise provides) in excess of $ 125. We will pay the whole filing fee if we demand arbitration first. Any portion of this arbitration clause that is unenforceable shall be severed, and the remaining provisions shall be enforced.”
(Capitalization in original.)
The Kennamers also entered into a separate arbitration agreement with the dealership, which provided, in pertinent part, as follows:
“Buyer/lessee acknowledges and agrees that the vehicle buyer/lessee is purchasing or leasing from dealer has traveled in interstate commerce. Buyer/lessee thus acknowledges that the vehicle and other aspects of sale, lease, or financing transaction are involved in, affect, or have a direct impact upon, interstate commerce. ••
“Buyer/lessee agree that all claims, demands, disputes, or controversies of every kind or nature between them arising from, concerning or relating to any of the negotiations involved in the sale, lease, or financing, of the vehicle, the terms and provisions of the sale, lease, or financing agreements, the arrangements for financing, purchase of insurance, extended warranties, service contracts or other products purchased as an incident to the sale, lease, or financing of the vehicle, the performance or condition of the vehicle, or any other aspects of the vehicle and its sale, lease, or financing, shall be settled by binding arbitration conducted pursuant to the provision of the Federal Arbitration Act 9 U.S.C. Section 1 et seq. and according to the Commercial Arbitration Rules of the Better Business Bureau of North Alabama. All parties retain the right to seek relief in a small claims court for disputes of claims within the scope of its jurisdiction.”
In the summer of 2010, the Kennamers began experiencing problems with the car. The Kennamers contend that they stopped making the monthly payments required under the installment contract because of the mechanical problems. Although the Kennamers were aware that the car had been involved in an accident when they purchased it, they discovered that the damage to the car had been more extensive than they say they were told. According to the Kennamers, the dealership and its salesman misrepresented the extent of the damage to the car, and they relied upon those misrepresentations in purchasing the car. They confronted the dealership (who contacted Ford Credit) with the allegations, but the dealership and Ford Credit refused to cancel the contract or to refund the Kennamers’ money.
*757 On February 1, 2011, Ford Credit repossessed the car and sold it at an auction for $18,400. The sale at the auction resulted in the Kennamers having a balance owed on the purchase price of the car of $4,864, which, pursuant to the terms of the installment contract, the Kennamers were responsible for.
On November 2, 2011, Ford Credit sued the Kennamers in the district court in order to the collect the deficiency, along with attorney fees, interest, and court costs. The Kennamers filed an answer and subsequently responded to 18 interrogatory questions and 16 requests for admissions posed by Ford Credit. On April 10, 2012, Ford Credit filed a motion for a summary judgment, attaching the Kennamers’ responses in support of the motion. The Kennamers opposed summary judgment and stated that they intended to file a counterclaim against Ford Credit and intended to join the dealership as a party and to file a claim against it. The Kennamers stated that the amount of the counterclaim and the claim combined would exceed the jurisdiction of the district court. On July 9, 2012, the district court entered a summary judgment for Ford Credit and awarded Ford Credit $4,364 and an attorney fee of $654, along with court costs. On July 23, 2012, the Kennamers filed a postjudgment motion seeking to alter, amend, or vacate the judgment or, in the alternative, a new trial. The postjudgment motion was denied by operation of law. On August 15, 2012, the Kennamers timely filed an appeal to the circuit court.
On August 31, 2012, Ford Credit filed a summary-judgment motion, attaching documents from the district-court action. On September 14, 2012, the Kennamers filed a counterclaim against Ford Credit, alleging fraud, breach of contract, negligence, wantonness, and intentional infliction of emotional distress. That same day, the Ken-namers moved to serve a complaint on the dealership, alleging fraud and breach of contract. In their complaint against the dealership, the Kennamers also alleged that “if [the Kennamers] are liable to [Ford Credit] on the claims presented in [Ford Credit’s] complaint, they are liable because of the acts and omissions of [the dealership].”
On October 3, 2012, Ford Credit filed a motion to dismiss the Kennamers’ counterclaim on the ground that the counterclaim failed to state a claim upon which relief may be granted. On October 12, 2012, the circuit court denied Ford Credit’s motion to dismiss and granted the Kennamers’ motion to serve the dealership.
On October 26, 2012, Ford Credit filed a motion to compel arbitration and attached to the motion a copy of the installment contract. On November 6, 2012, the dealership filed a motion to dismiss or, in the alternative, to compel arbitration based on the arbitration agreement between the dealership and the Kennamers. The dealership attached an affidavit from its general manager, which provided:
“The automobile in question was manufactured out of state and delivered into Alabama prior to the sale to Mr. and Mrs. Kennamer. As part of the purchase process, the majority of the purchase price was paid by receipt of a loan from Ford Motor Credit Co., Inc., a corporation foreign to Alabama, with such money coming into Alabama from out of state.
“Furthermore, various aspects of the sale were regulated by federal laws, including, the Federal Truth-in-Lending Act, the Federal Trade Commission’s Holder in Due Course regulations, the Federal Odometer Act (the Motor Vehicle Information and Cost Savings Act), and the Magnuson Moss Warranty Act.
*758 The transaction as a whole substantially involved and affected interstate commerce.”
On December 12, 2012, the Kennamers responded and attached an affidavit in support of their opposition to both motions to compel. The Kennamers argued that Ford Credit and the dealership (as the assignor of the installment contract) waived their rights to arbitrate because Ford Credit had sought discovery in the district court, had filed a summary-judgment motion, and had obtained a judgment against the Kennamers in the district court. The Kennamers argued that, in order to avoid the res judicata effect of the district-court judgment, they had had to appeal that judgment to the circuit court and had incurred litigation expenses, such as court costs and attorney fees, in doing so. The Kennamers also argued that they were required to file their claims against Ford Credit and the dealership shortly after filing their appeal to the circuit court in accordance with Rule 13(j), Ala. R. Civ. P.[1] Additionally, the Kennamers argued that the transaction did not involve interstate commerce so as to mandate arbitration.
On December 14, 2012, the dealership filed a response, arguing that the transaction involved interstate commerce. The dealership also argued that it was not a party to the district-court action and that, after being served with notice of the circuit-court action, it filed an answer and a motion to dismiss or, in the alternative, a motion to compel arbitration. The dealership argued that the Kennamers were not substantially prejudiced by its actions in filing an answer and a motion to dismiss. That same day, the Kennamers filed a response to the motions to compel, contending that if the circuit court compelled arbitration of their claims against the dealership then there should be one arbitration proceeding before the American Arbitration Association (“AAA”) instead of a separate arbitration proceeding for the dealership pursuant to the rules of the Better Business Bureau as provided for in the arbitration agreement between the Ken-namers and the dealership.
On December 21, 2012, the circuit court granted the motions to compel arbitration and stayed the action pending confirmation of the outcome of the arbitration. On January 16, 2013, the Kennamers filed a motion to alter, amend, or vacate the judgment and/or seeking clarification. On January 22, 2013, the dealership filed a response, agreeing to participate in a single arbitration proceeding before the AAA.
On January 28, 2013, the circuit court entered an order denying the post-judgment motions but clarifying that there would be one arbitration proceeding before the AAA. On March 11, 2013, the Kennam-ers filed a notice of appeal.

Standard of Review

“ ‘This Court reviews de novo the denial of a motion to compel arbitration. Parkway Dodge, Inc. v. Yarbrough, 779 So.2d 1205 (Ala.2000). A motion to compel arbitration is analogous to a motion for a summary judgment. TranSouth Fin. Corp. v. Bell, 739 So.2d 1110, 1114 (Ala.1999). The party seeking to compel arbitration has the burden of proving the existence of a contract calling for arbitration and proving that the contract evidences a transaction affecting interstate commerce. Id. “[A]fter a motion to compel arbitration has been made and supported, the burden is on the non-movant to present evidence that the supposed arbitration *759 agreement is not valid or does not apply to the dispute in question.” Jim Burke Automotive, Inc. v. Beavers, 674 So.2d 1260, 1265 n. 1 (Ala.1995) (opinion on application for rehearing).’ ”
Elizabeth Homes, L.L.C. v. Gantt, 882 So.2d 813, 315 (Ala.2003) (quoting Fleetwood Enters., Inc. v. Bruno, 784 So.2d 277, 280 (Ala.2000)).
“It is well settled under Alabama law that a party may waive its right to arbitrate a dispute if it substantially invokes the litigation process and thereby substantially prejudices the party opposing arbitration. Whether a party’s participation in an action amounts to an enforceable waiver of its right to arbitrate depends on whether the participation bespeaks an intention to abandon the right in favor of the judicial process, and, if so, whether the opposing party would be prejudiced by a subsequent order requiring it to submit to arbitration. No rigid rule exists for determining what constitutes a waiver of the right to arbitrate; the determination as to whether there has been a waiver must, instead, be based on the particular facts of each case.”
Companion Life Ins. Co. v. Whitesell Mfg., Inc., 670 So.2d 897, 899 (Ala.1995).
“In order to demonstrate that the right to arbitrate a dispute has been waived, the party opposing arbitration must demonstrate both (1) that the party seeking arbitration substantially invoked the litigation process, and (2) that the party opposing arbitration would be substantially prejudiced by an order requiring it to submit to arbitration.” SouthTrust Bank v. Bowen, 959 So.2d 624, 633 (Ala. 2006). Additionally, “[o]ur cases continue to make it clear that, because of the strong federal policy favoring arbitration, a waiver of the right to compel arbitration will not be lightly inferred, and, therefore, that one seeking to prove waiver has a heavy burden.” Mutual Assurance, Inc. v. Wilson, 716 So.2d 1160,1164 (Ala.1998).

Discussion

The Kennamers presented the following facts in support of their contention that their transaction with the dealership and Ford Credit did not involve interstate commerce: (1) the Kennamers are residents of Alabama; (2) the previous owners of the car the Kennamers purchased were residents of Alabama; (3) the Kennamers were buying the car for consumer, not commercial, purposes; (4) the dealership is located in Alabama; (5) the car was delivered to the Kennamers in Alabama; and (6) all the substantial obligations arising out of the installment contract were to be performed in Alabama. The Kennamers argue that the dealership and Ford Credit failed to present sufficient evidence showing that the transaction involved interstate commerce.
The Federal Arbitration Act, 9 U.S.C. § 1 et seq. (“the FAA”), “mandates the arbitration of claims encompassed by an arbitration clause that is contained in a binding contract that involves interstate commerce.” Ex parte Conference America, Inc., 713 So.2d. 953, 955 (Ala.1998). “The FAA ‘provides for “the enforcement of arbitration agreements within the full reach of the Commerce Clause.” ’ ” Wolff Motor Co. v. White, 869 So.2d 1129, 1132 (Ala.2003) (quoting Citizens Bank v. Alafabco, Inc., 539 U.S. 52, 56, 123 S.Ct. 2037, 156 L.Ed.2d 46 (2003), quoting in turn Perry v. Thomas, 482 U.S. 483, 490, 107 S.Ct. 2520, 96 L.Ed.2d 426 (1987)).
“It is well established that Congress can regulate three broad categories of activity pursuant to its commerce power: (1) the use of the channels of interstate commerce; (2) the instrumentalities of in *760 terstate commerce or persons or things in interstate commerce; and (3) those general activities having a substantial effect on interstate commerce.” Wolff Motor Co., 869 So.2d at 1132. Previously, this Court has recognized the purchase of a used car from a dealer as a transaction involving interstate commerce. See Dan Wachtel Ford, Lincoln, Mercury, Inc. v. Modas, 891 So.2d 287 (Ala.2004) (holding that the dealer established that the purchase of the used car involved interstate commerce where there was evidence that the car was manufactured outside Alabama, a credit report was obtained from an out-of-state company, the buyer purchased an extended warranty from an out-of-state company, and various aspects of the dealer’s business were regulated by federal law); Serra Toyota, Inc. v. Johnson, 876 So.2d 1125 (Ala.2003) (holding that dealer established that the used-car purchase involved interstate commerce where the dealer submitted evidence that the car was manufactured outside Alabama, the purchaser bought an extended warranty from an out-of-state company, the previous owner lived outside Alabama, and the dealer had purchased the car from an out-of-state bank).
In the present case, the circuit court had before it the affidavit from the general manager of the dealership that stated that the car the Kennamers purchased was manufactured outside Alabama, that the majority of the purchase price was financed by Ford Credit, an out-of-state company, and that the transaction was regulated by several federal laws. Other information before the circuit court indicated that a vehicle-history report obtained by the dealership at the time the Kennamers purchased the car was performed by an out-of-state company. We also note that, after Ford Credit repossessed the car, it was sold at an out-of-state auction. Accordingly, we cannot say that the circuit court erred in concluding that instrumentalities of interstate commerce were involved in the transaction.
Next, the Kennamers argue that Ford Credit and the dealership waived their right to arbitration by substantially invoking the litigation process. Specifically, the Kennamers argue that Ford Credit waived its right by filing an action in the district court, by conducting written discovery, and by obtaining a judgment and causing the Kennamers to appeal to the circuit court for a trial de novo and to bring their counterclaim against Ford Credit and their claim against the dealership. Although the dealership was not a party to the district-court action, the Ken-namers contend that because “Ford Credit as assignee pursued [the dealership’s] claim through to judgment in the district court, the [dealership] as assignor must also be deemed to have waived arbitration of those claims.” (Kennamers’ brief, p. 33.)
“It is well settled under Alabama law that a party may waive its right to arbitrate a dispute if it substantially invokes the litigation process and thereby substantially prejudices the party opposing arbitration. Whether a party’s participation in an action amounts to an enforceable waiver of its right to arbitrate depends on whether the participation bespeaks of an intention to abandon the right in favor of the judicial process and, if so, whether the opposing party would be prejudiced by a subsequent order requiring it to submit to arbitration. No rigid rule exists for determining what constitutes a waiver of the right to arbitrate; the determination as to whether there has been a waiver must, instead, be based on the particular facts of each case.”
Companion Life, 670 So.2d at 899.
“Both substantial invocation of the litigation process and prejudice must be *761 present to establish waiver. Ex parte Merrill Lynch, Pierce, Fenner & Smith, Inc., 494 So.2d 1 (Ala.1986). Because of the strong federal policy applicable to arbitration proceedings set forth in the Federal Arbitration Act, 9 U.S.C. § 1 et seq., one seeking to establish a waiver of arbitration bears a heavy burden. SouthTrust Bank v. Bowen, 959 So.2d 624 (Ala.2006); Mutual Assurance, Inc. v. Wilson, 716 So.2d 1160 (Ala.1998).”
Paw Paw’s Camper City, Inc. v. Hayman, 973 So.2d 344, 347 (Ala.2007).
“ ‘Prejudice to the party opposing arbitration, not prejudice to the party seeking arbitration, is determinative of whether a court should deny arbitration on the basis of waiver.’ Price [v. Drexel Burnham Lambert, Inc.], 791 F.2d [1156,] 1162 [(5th Cir.1986) ] (footnote omitted). ‘Both delay and the extent of the moving party’s participation in judicial proceedings are material factors in assessing a plea of prejudice.’ Frye [v. Paine, Webber, Jackson & Curtis, Inc.], 877 F.2d [396,] 399 [ (5th Cir.1989) ].
“‘Prejudice has been found in situations where the party seeking arbitration allows the opposing party to undergo the types of litigation expenses that arbitration was designed to alleviate.’ Morewitz v. West of England Ship Owners Mut. Protection & Indem. Ass’n, 62 F.3d 1356, 1366 (11th Cir.1995). ‘Sufficient prejudice to infer waiver might be found, for example, if the party seeking the stay [for arbitration] took advantage of judicial discovery procedures not available in arbitration.’ Carcich v. Rederi A/B Nordie, 389 F.2d 692, 696 n. 7 (2d Cir.1968).”
Hales v. ProEquities, Inc., 885 So.2d 100, 105-06 (Ala.2003).
First, we will address the Ken-namers’ waiver argument as to Ford Credit. In the district court, Ford Credit pursued its claim against the Kennamers seeking the deficiency owed on the loan following the sale of the car at auction. Ford Credit sought limited discovery, and, ultimately, the district court entered a judgment in its favor. Although we recognize that discovery is limited in a district court and that Ford Credit sought answers to a small number of interrogatory requests and requests for admissions to support its summary-judgment motion, Ford Credit’s acts in pursuing its claim against the Kennamers evinced a desire to resolve the dispute to judgment in a court of record through litigation rather than arbitration. The Kennamers have shown that they suffered prejudice in that they had to pay court costs to appeal the district court’s judgment in favor of Ford Credit, a cost not associated with arbitration. Also, the Kennamers incurred legal fees while the case was pending in the district court, and there was an 11-month delay from the time Ford Credit filed its action in the district court and the time that it moved to compel arbitration in the circuit court.
We now turn to the Kennam-ers’ argument that the dealership is bound by Ford Credit’s actions in the district court because, they argue, the dealership assigned its rights and liabilities under the installment contract to Ford Credit. In support of its argument, the Kennamers cite authority for the general proposition that an assignee stands in the shoes of the assignor. It is well settled that general propositions of law are not supporting authority for purposes of Rule 28(a)(10), Ala.R.App. P. Allsopp v. Bolding, 86 So.3d 952 (Ala.2011).
“This Court will not ‘create legal arguments for a party based on undelineated general propositions unsupported by authority or argument.’ Spradlin v. Spradlin, 601 So.2d 76, 79 (Ala.1992). Further, it is well settled that ‘ “[w]here *762 an appellant fails to cite any authority for an argument, this Court may affirm the judgment as to those issues, for it is neither this Court’s duty nor its function to perform all the legal research for an appellant.’” Spradlin v. Birmingham Airport Auth., 613 So.2d 347, 348 (Ala.1993) (quoting Sea Calm Shipping Co., S.A. v. Cooks, 565 So.2d 212, 216 (Ala.1990)).”
Allsopp, 86 So.3d at 960.
Even if the Kennamers had properly supported their argument regarding assignment, it would not support their contention that the dealership is bound by Ford Credit’s actions in district court. In this case, Ford Credit provided the dealership with financing for used-car purchasers like the Kennamers. Ford Credit supplied the dealership with blank retail-installment-contract forms to filled in by the dealership and the purchaser before the contract is signed. The dealership then assigns the completed contract to Ford Credit, and Ford Credit administers and collects the loan from the purchaser. “An assignment is a contractual transfer of a right, interest, or claim from one person to another.” 6A C.J.S. Assignments § 1 (2004). “ ‘Unless the assignment is void or otherwise invalid, [the assignor losses] all right to control or enforce the terms of the note....’” Associates of Selma, Inc. v. Whetstone, 628 So.2d 578, 580 (Ala.1993) (quoting 6A C.J.S. Assignments § 96, p. 753 (1975)). Generally, an assignment extinguishes the right of the assignor and transfers it to the assignee. DuPont v. Yellow Cab Co. of Birmingham, Inc., 565 So.2d 190 (Ala.1990). The assignee then stands in the shoes of the assignor and succeeds to all the rights and remedies of the assignor. Atlantic Nat’l Trust, LLC v. McNamee, 984 So.2d 375 (Ala.2007).
In Nissan Motor Acceptance Corp. v. Ross, 703 So.2d 324, (Ala.1997), the purchaser bought a new car from a dealership. The purchaser and the dealership entered into a retail-buyer’s order, which contained an arbitration clause. They also entered into a retail-sales contract. Nissan became a party to the retail-sales contract when the dealership assigned it to Nissan. The retail-sales contract contained an arbitration clause. Nissan argued that, through the assignment, it stepped into the shoes of the assignor, the dealership, and could enforce the arbitration provision. We stated:
“As an assignee, Nissan simply steps into the shoes of the assignor, Jim Burke, a signatory to the arbitration agreement. Upchurch v. West, 234 Ala. 604, 609, 176 So. 186, 190 (1937), overruled on other grounds, Dominex, Inc. v. Key, 456 So.2d 1047 (Ala.1984). A valid assignment gives the assignee the same rights,- benefits, and remedies that the assignor possesses. Id. Accord John D. Calamari & Joseph M. Perillo, The Law of Contracts, § 18-3 at 633, 634 (2d ed.1977). Thus, Nissan has the right to compel arbitration. See, e.g., IS. Joseph Co. v. Michigan Sugar Co., 803 F.2d 396, 400 (8th Cir.1986) (stating that, assuming a valid assignment, the assignee could enforce an arbitration provision entered into by the assignor); Chatham Shipping Co. v. Fertex S.S. Corp., 352 F.2d 291, 294 (2d Cir.1965) (stating that ‘absent contrary expression, assignment of a contract carries with it a right to arbitration therein provided’); Gruntal & Co. v. Steinberg, 843 F.Supp. 1 (D.N.J.1994) (stating that ‘a successor to or assignee of a contract containing an arbitration clause may be obligated to arbitrate pursuant to that arbitration clause’); Banque de Paris et des Pays-Bas v. Amoco Oil Co., 573 F.Supp. 1464 (S.D.N.Y.1983) (stating that an assignee may pursue the claims of the assignor and may enforce an arbi *763 tration provision ■ the assignor had agreed to).”
703 So.2d at 326.
In this case, that means because of the dealership’s assignment to Ford Credit, Ford Credit stands in the shoes of the dealership, and the dealership no longer has any interest in the contract. Ford Credit can enforce the terms of the contract in any manner or any forum it chooses, but the dealership cannot. However, the dealership’s assignment to Ford Credit does not make the dealership bound by Ford Credit’s actions in the district court. Consequently, the dealership cannot enforce the arbitration clause under the installment contract either, because it assigned its right and liabilities to Ford Credit. Nevertheless, the dealership had a separate arbitration agreement with the Kennamers.
The dealership did not participate in the district-court litigation. The dealership, after being served with the complaint in the circuit court, filed an answer and a motion to dismiss or, in the alternative, to compel arbitration. “‘Merely answering on the merits, asserting a counterclaim (or cross-claim) or participating in discovery, without more, will not constitute waiver.’ ” ClimaStor IV, LLC v. Marshall Constr., LLC, 4 So.3d 452, 458 (Ala.2008)(quoting Voyager Life Ins. Co. v. Hughes, 841 So.2d 1216,1219 (Ala.2001)).
Although the issue is not addressed by the parties, we recognize that enforcing arbitration of related claims as to one defendant but not another may lead to inconsistent results and a lack of judicial economy. The United States Supreme Court has recognized that, even though ordering arbitration as to fewer than all defendants may result in proceedings in two forums, the FAA “requires piecemeal resolution when necessary to give effect to an arbitration agreement.” Moses H. Cone Mem’l Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 19, 103 S.Ct. 927, 74 L.Ed.2d 765 (1983). In Moses H. Cone, the hospital had contractually agreed to arbitrate any disputes it had with Mercury Construction. The hospital had a dispute with Mercury and an architect with whom the hospital had not entered into an arbitration agreement. The Supreme Court recognized that the hospital’s related dispute with' the architect could not prevent enforcement of its valid arbitration agreement with Mercury. The Supreme Court also recognized that if “the dispute between Mercury and the Hospital is arbitrable under the [United States Arbitration] Act [now the FAA], then the Hospital’s two disputes will be resolved separately — one' in arbitration, and the other (if at all) in state-court litigation.” 460 U.S. at 20. The United States Supreme Court did not require arbitration of the hospital’s dispute with the architect in the absence of an agreement to arbitrate between the two, even where the two disputes were closely related.[2] Id. Similarly, Ford Credit’s waiver of its right to arbitrate does not prevent this Court from *764 enforcing the separate arbitration agreement between the dealership and the Ken-namers.

Conclusion

The judgment of the circuit court is affirmed insofar as it granted the dealership’s motion to compel arbitration and reversed insofar as it granted Ford Credit’s motion to compel arbitration. This cause is remanded for further proceedings consistent with this opinion.
AFFIRMED IN PART; REVERSED IN PART; AND REMANDED.
STUART, PARKER, MURDOCK, SHAW, WISE, and BRYAN, JJ„ concur.
MAIN, J., dissents.

. Rule 13(j), Ala. R. Civ. P., addresses the filing of counterclaims and cross-claims in actions appealed to the circuit court for a trial de novo.

. Arbitration may be compelled under the doctrine of intertwining where arbitrable and nonarbitrable claims are so closely related that the party to a controversy subject to arbitration is equitably estopped from denying arbitrability of the related claim. Jenkins v. Atelier Homes, Inc., 62 So.3d 504 (Ala.2010). The intertwining-claims doctrine applies to claims and not to parties and precludes arbitration only where there are nonarbitrable claims against a party that are factually intertwined with arbitrable claims against that same party. Also, a nonsignatory can be bound to an arbitration agreement when the nonsignatory is also a third-party beneficiary to the contract containing the arbitration clause. Edwards v. Costner, 979 So.2d 757 (Ala.2007). Neither of those exceptions is applicable here.