Rel: May 9, 2025

**Notice:** This opinion is subject to formal revision before publication in the advance sheets of **Southern Reporter**.  Readers are requested to notify the **Reporter of Decisions**, Alabama Appellate Courts, 300 Dexter Avenue, Montgomery, Alabama 36104-3741 ((334) 229-0650), of any typographical or other errors, in order that corrections may be made before the opinion is printed in **Southern Reporter**.

# SUPREME COURT OF ALABAMA

## OCTOBER TERM, 2024-2025

_____

### SC-2024-0534

_____

### Bradley C. Lewis

### v.

### Lily T. Ojano-Bracco, Mountain West IRA, Inc., Angelina M. Sharman, and James R. Sharman

### Appeal from Jefferson Circuit Court
### (CV-17-900540)

MITCHELL, Justice.

Bradley C. Lewis appeals to this Court from the Jefferson Circuit Court judgment denying his Rule 60(b)(4), Ala. R. Civ. P., motion.  In that

motion, he sought to set aside a default judgment that the trial court had entered against him. He argues that he was unaware of this case and that he was not appropriately served. We determine, however, that service was proper, and we therefore affirm the judgment.

Facts and Procedural History

In February 2017, Lily T. Ojano-Bracco, Mountain West IRA, Inc., Angelina M. Sharman, and James R. Sharman ("the plaintiffs") sued Lewis, in addition to Birmingham Income Property, LLC ("BIP"), MAC, LLC, and Bryan Conwill. The plaintiffs alleged that BIP, of which Lewis and Conwill were owners, had defrauded them.

In June 2017, a process server attempted to serve Lewis. The process server delivered a summons and complaint to Xavier Young, Lewis's stepson, at 6276 Letson Farms Drive.[1] Lewis had lived at this address with his wife since 2010, and Lewis himself testified that this was his "address on record." The Letson Farms address was the marital home for Lewis and his wife until at least their separation date of December 1, 2018.

---

[1]An executed return on service, dated June 17, 2017, lists the recipient as "Xavier Lewis," but this appears to refer to Xavier Young.

Around this time, Lewis also repeatedly represented that he resided at the Letson Farms address. He listed the address on his tax return in at least 2017, 2018, and 2019, and he also did so in a 2019 bankruptcy filing. He provided the address to the Alabama Secretary of State when registering as an agent for two separate companies between 2017 and 2020. And he accepted service in an unrelated suit at the Letson Farms address in 2018.

Young, who accepted the summons and complaint at issue here, also appears to have been living at the Letson Farms address in 2017. He had listed the address as his own during his divorce proceedings in June 2016, and he did so again in an application for a certificate of title a few years later. And he was evidently staying at the Letson Farms address on several occasions in 2017 because he accepted a summons on Lewis's behalf four times that year.

Nevertheless, despite all the evidence linking Lewis to the Letson Farms house, he did not respond to the plaintiffs' complaint or the summons delivered there in June 2017. And he continued to ignore years' worth of motions, notices, and other papers that the plaintiffs and the trial court mailed to him at the Letson Farms address. Indeed, between

June 2017 and April 2023, Lewis failed to respond to summonses in at least five separate suits in which he was named.

In May 2021, after a hearing, the trial court entered a default judgment in favor of the plaintiffs against BIP, Lewis, and Conwill. Still, Lewis did nothing. Finally, in June 2022, the plaintiffs found another address for Lewis. They then sent Lewis two letters, two motions to compel, a motion to show cause, and a notice of service at this second address. Lewis again did nothing, and he later testified that he would not have opened any mail from the plaintiffs because he does not open mail from "debt collectors."

In March 2023, Lewis received a notice of garnishment at the second address. He admits to seeing this notice, but he did not respond. It was only that April, when the sheriff personally served Lewis with a court order finding him in contempt and ordering him to appear, that Lewis finally responded. Lewis alleged that this was his first notice of the plaintiffs' suit against him.

Lewis filed a Rule 60(b)(4) motion in the trial court to set aside the default judgment. He based this motion on his own testimony, asserting

4

that he was never properly served with process. After a hearing, the trial court denied Lewis's motion. Bradley appealed to our Court.

## Standard of Review

We review a denial of relief under Rule 60(b)(4) de novo. Allsopp v. Bolding, 86 So. 3d 952, 957 (Ala. 2011).

## Analysis

Rule 4, Ala. R. Civ. P., governs our analysis here. In relevant part, that rule provides that service of process is valid if performed "at the individual's dwelling house or usual place of abode with some person of suitable age and discretion then residing therein." Rule 4(c)(1). The plaintiffs allege, and Lewis denies, that the Letson Farms address was Lewis's "usual place of abode." Similarly, the parties dispute whether Young "resid[ed]" at the Letson Farms address. We discuss these two issues below.

### A. The Letson Farms Address Was Lewis's Usual Place of Abode

Courts look to the facts of each case to determine a party's "usual place of abode." Allsopp, 86 So. 3d at 962. And they analyze those facts while "mindful that the purpose of Rule 4 is to ensure that service is reasonably calculated to provide a defendant with actual notice of the

action." Id. (citing Karlsson v. Rabinowitz, 318 F.2d 666 (4th Cir. 1963), and Mullane v. Central Hanover Bank & Tr. Co., 339 U.S. 306, 314 (1950)).

The evidence indicates that, as of 2017, the Letson Farms address was Lewis's usual place of abode. He listed the address on his tax returns. He did the same in a later bankruptcy filing. And he provided the address to the Secretary of State when registering as an agent for his various companies. He himself testified that the Letson Farms address was his "address on record." And he even personally accepted service of process -- in yet another suit -- at that address in 2018.

In addition, though we have not previously held so, a married man's marital home, for purposes of service of process, is presumed to be his usual place of abode. Several of our sister courts have reached this conclusion, and we find their analysis persuasive. See, e.g., Fassett v. Evans, 364 S.C. 42, 47, 610 S.E.2d 841, 844 (Ct. App. 2005) (citing 62B Am. Jur. 2d Process 210 (1990)); CC Home Lenders v. Cioffi, 294 A.D.2d 325, 325, 742 N.Y.2d 101, 103 (2002) (holding that marital residence remained defendant's "usual place of abode" after he left to live with his mother). Therefore, because Lewis and his wife did not officially separate

until December 2018, the marital home at the Letson Farms address was his "usual place of abode" in June 2017.

This is true even though Lewis may have been renting a separate apartment when the plaintiffs initiated this suit. A person can have "more than one 'usual place of abode,' provided that each contains sufficient indicia of permanence." Allsopp, 86 So. 3d at 961-62. The facts above indicate that the Letson Farms address was permanent enough for Lewis to provide it to the IRS, the Alabama Secretary of State's office, and the bankruptcy court during this period. This satisfies our law and confirms that this address was sufficiently his "usual place of abode." See id. at 962 (holding that the mere existence of a romantic relationship with the property owner, along with shopping receipts showing the defendant was in the area, was sufficient to establish a usual place of abode).

B. Young Was a Person of Suitable Age and Discretion Then Residing at the Letson Farms Address

Just as we look to the facts of the case to determine the defendant's "usual place of abode," we likewise look to the facts to determine whether the recipient sufficiently "resid[ed]" there to accept service. See Allsopp, 86 So. 3d at 962; see also Heald v. Heald, 363 So. 3d 1014, 1015 (Ala. Civ.

7

App. 2021). Based on the facts here, Young, an adult child who accepted service for Lewis, resided at the Letson Farms address as Rule 4 requires.

We have had few occasions to set a clear standard for deciding how much connection to the home is needed for an adult to sufficiently "resid[e]" there for Rule 4 purposes. Other jurisdictions have varying approaches to this question. Some of our sister courts have even found that adult children satisfy the requirements of Rule 4 when they merely come home to visit. See M. Lowenstein & Sons, Inc. v. Austin, 430 F. Supp. 844 (S.D.N.Y. 1977); see also Plushner v. Mills, 429 A.2d 444 (R.I. 1981). But other courts, echoing the rule's text and various legal scholars, stress that the recipient must actually live in the same place as the defendant to be served. See Bible v. Bible, 259 Ga. 418, 418, 383 S.E.2d 108, 110 (1989); see also 4A Charles Alan Wright, Arthur R. Miller & Adam N. Steinman, Federal Practice and Procedure § 1096 (4th ed. 2015).

We need not definitively settle this split -- Young "resid[ed]" at the Letson Farms address under either definition. In our view, an adult child satisfies Rule 4's requirement when he represents, on official documentation, that he lives at the family home. If someone listing an

address is sufficient "indicia" of permanence to establish his "usual place of abode," it is equally sufficient to establish that an adult child "resid[es]" at his parent's home. Allsopp, 86 So. 3d at 961-62. And, just as a person may have more than one "usual place of abode," this remains true even if the adult child has more than one residence. Id.

Young held out to the world, including on official documents, that he resided at the Letson Farms address. During his 2016 divorce proceedings, Young represented the Letson Farms address as his own in sworn interrogatories. He again listed it as his address a few years later on an application for a certificate of title. And, further proving that he in fact resided at the Letson Farms address, Young accepted service on Lewis's behalf on four separate occasions over the course of 2017. Consequently, he was an appropriate person to receive service for Lewis at the Letson Farms home.

## Conclusion

The Letson Farms address was Lewis's "usual place of abode." And Young, an adult child of Lewis's wife, was a person of suitable age and discretion who resided at the Letson Farms address. For that reason, when Young accepted service from the plaintiffs on Lewis's behalf, the

plaintiffs properly served Lewis for the purposes of Rule 4. Accordingly, the trial court was correct to deny Lewis's Rule 60(b)(4) motion, and we affirm the judgment against him.

AFFIRMED.

Stewart, C.J., and Wise, Sellers, and McCool, JJ., concur.